FIRSTIER BANK, N.A., Omaha, As Trustee of the Profit Sharing Plan and Employees Trust of Land Paving Company, Plaintiff–Appellee,

v.

James R. ZELLER; Patricia A. Olsen, Individually and as Personal Representative of the Estate of Duane H. Olsen; James E. Lonergan; Bryan Vercoe, Defendants–Third Party Plaintiffs–Appellants.

LAND PAVING COMPANY; Anthony E. Dombrowski; Frank Bosanek; Eugene H. Hess; Richard J. O'Konsky; Profit Sharing Plan and Employees Trust of Land Paving Company, Defendants,

v.

George N. SILENCE; Management Consultant Services, Inc., Third Party Defendants–Appellees, and

James E. Bachman, Appellant.

No. 92–3595.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1993.

Decided Feb. 16, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 18, 1994.

Counsel who presented argument on behalf of the appellant was James Bachman, Omaha, NE; additional attorney appearing on the brief was Paul R. Elofson.

Counsel who presented argument on behalf of the appellee was William J. Riley, Omaha, NE; additional attorneys appearing on the briefs were Daniel J. Wintz and D.C. Bradford.

Before FAGG, BOWMAN, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

This appeal requires us to define the fiduciary duties of an ERISA[1] plan trustee in carrying out an employer's direction to make loans to plan participants that are exempt from some ERISA prohibitions under 29 U.S.C. § 1108(b)(1). We agree with the district court[2] that the trustee retains certain fiduciary duties that were not violated by appellee FirsTier Bank, N.A., in this case. Accordingly, except for a Rule 11 sanction, we affirm.

## I. Background.

Appellants James Zeller, Patricia Olsen, James Lonergan, and Bryan Vercoe, who will be referred to in this opinion as the "Participants," are former employees of bankrupt Land Paving Company ("LPC") and participants in and beneficiaries of LPC's Profit Sharing Plan and Employees Trust (the "Plan"). LPC has had a profit sharing plan since 1953. The current Plan, adopted in 1984, named FirsTier's predecessor, Omaha National Bank, trustee of the Plan assets.

In December 1986, LPC was deeply in debt, primarily to FirsTier, and in a precarious financial condition. Its president, Anthony Dombrowski, retained appellees George Silence and his firm, Management Consultant Services, Inc. (collectively "Silence"), as financial consultants. Silence advised that LPC needed to obtain new financing for the 1987 asphalt paving season; this required finding sources of cash to meet FirsTier's demand for a $600,000 debt repayment by March 31, 1987.

Dombrowski expected to raise $500,000 by collecting LPC receivables and selling patent rights, but that left a $100,000 shortfall. On March 27, Dombrowski had LPC's Board resolve to substitute Dombrowski for FirsTier as trustee of the Plan, intending to free up cash by funding the existing Plan accounts with annuities. However, Stanley A. Traub, Vice President of FirsTier's Trust Department, advised Dombrowski that the annuity proposal was impermissible. Traub also refused to accept FirsTier's removal as Plan trustee because he knew of LPC's heavy indebtedness and feared misuse of Plan assets. Traub explained to Dombrowski that the proposed successor trustee was not properly bonded under ERISA. *See* 29 U.S.C. § 1112.

---

[1]. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

[2]. The HONORABLE WILLIAM G. CAMBRIDGE, United States District Judge for the District of Nebraska.

A few days later, Dombrowski met with the Participants and persuaded them that the company would close its doors unless they borrowed from their individual Plan accounts and reloaned the proceeds to LPC for the purpose of paying down LPC's debt to Firs-Tier. On April 2, 1987, Dombrowski as Plan Administrator wrote Traub, directing Firs-Tier to make loans to each Participant pursuant to paragraph 20 of the Plan, which provides that "[t]he Trustee may, and shall at the direction of the Company, make a loan or loans to a Participant." FirsTier promptly prepared loan documents, obtained the Participants' signatures on installment notes secured by their interests in the Plan, and disbursed loan proceeds totaling $93,950 to the individual Participants.

The Participants transferred the loan proceeds to Dombrowski's personal account at another bank, receiving promissory notes from LPC and Dombrowski in return. Dombrowski then wrote a $240,000 check on this account to LPC, which used the money to fund part of its March 31 loan payment to FirsTier and to pay Silence's consulting fee. LPC went into bankruptcy in June 1987 and its operating assets were sold. Both the Plan's loans to the Participants and their loans to LPC and Dombrowski remain unpaid.

FirsTier commenced this action in 1989, seeking a declaration of its status with respect to the Plan. The Participants asserted counterclaims and third party claims against FirsTier, Silence, and Dombrowski, alleging that they violated ERISA and RICO by knowingly making or permitting improper plan participant loans. Dombrowski defaulted and testified on behalf of the Participants at trial.

The district court dismissed the Participants' RICO claims and tried their ERISA claims and FirsTier's declaratory judgment claim to the court. The court found that LPC's direction to FirsTier and the subsequent loans of Plan assets to the Participants were proper under paragraph 20 of the Plan

and ERISA; that FirsTier did not know the Participants would immediately lend the loan proceeds to LPC at the request of Dombrowski; and that FirsTier did not know that the participant loans funded a portion of LPC's March 31 loan payment to the bank. Based upon these findings,[3] the court concluded that FirsTier had not violated its fiduciary duties under ERISA. It declared that FirsTier was still the Plan trustee and awarded FirsTier $64,912.44 in attorneys' fees and expenses from the Plan, as authorized by the Plan. *See* 29 U.S.C. § 1108(c)(2).

The district court also dismissed the Participants' claims against Silence based on its findings that Silence did not act as a Plan fiduciary, and was unaware of Dombrowski's scheme to use the proceeds of the plan participant loans to repay LPC's bank debts. It awarded Silence his fees and expenses as a Rule 11 sanction against the Participants and their attorney, James E. Bachman, because the third-party complaint was "not well-grounded in fact."

The Participants raise numerous issues on appeal, only four of which require discussion: (1) whether FirsTier breached its ERISA fiduciary duties in lending Plan assets to the Participants; (2) whether FirsTier is entitled to its fees and expenses from the Plan; (3) whether the ERISA claim against Silence was properly dismissed; and (4) whether the Rule 11 monetary sanction should be upheld. We affirm all but the Rule 11 sanction.

## II. FirsTier's Alleged Breach of Fiduciary Duty.

"Borrowing from trust law, ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). As the district court recognized, the critical legal issue in this case is the precise nature

---

**3.** The district court announced its detailed findings and conclusions from the bench. *See* Fed. R.Civ.P. 52(a). The Participants argue that the court abused its discretion in not finding additional facts favorable to the Participants. This

contention is frivolous. The trial court "only must formulate findings on the ultimate facts necessary to reach a decision." *Falcon Equip. Corp. v. Courtesy Lincoln Mercury, Inc.,* 536 F.2d 806, 808 (8th Cir.1976).

and extent of FirsTier's duty as trustee in lending Plan assets to the Participants.

### A.

FirsTier argues that it had *no* fiduciary duty with respect to these participant loans because it made the loans "at the direction of the Company" under paragraph 20 of the Plan and therefore did not exercise fiduciary discretion. We disagree.

■ FirsTier is the named trustee under the Plan, authorized and directed to hold, manage, invest, and account for all Plan assets. ERISA provides that

a person is a fiduciary ... to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of [plan] assets....

29 U.S.C. § 1002(21)(A). Note that this section imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management*, but imposes those duties *whenever* one deals with plan *assets*. This distinction is not accidental—it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* — U.S. —, —, 114 S.Ct. 517, 524, 126 L.Ed.2d 524 (1993) ("Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive").

■ It is true, as FirsTier notes, that a trustee's control of ERISA plan assets may be made "subject to proper directions" of another fiduciary if those directions "are made in accordance with the terms of the plan and ... are not contrary to this chapter." 29 U.S.C. § 1103(a). This provision no doubt modifies, but we conclude it does not eliminate, the trustee's fiduciary duty when handling plan assets. When the direction comes from another fiduciary, as it did in this case, the law of trusts does not excuse a compliant trustee from all fiduciary responsibility:

[W]here the holder of the power [to direct the trustee] holds it as a fiduciary, the trustee is not justified in complying with his directions if the trustee knows or ought to know that the holder of the power is violating his duty to the beneficiaries as fiduciary in giving the directions.

IIA *Scott on Trusts* § 185, at p. 574 (4th ed. 1987). We conclude from the limitation in § 1103(a) to directions "not contrary to this chapter" that Congress adopted this standard in ERISA. Thus, an ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties to conform to the prudent man standard of care, *see* 29 U.S.C. § 1104(a); to attempt to remedy known breaches of duty by other fiduciaries, *see* 29 U.S.C. § 1105(a); and to avoid prohibited transactions, *see* 29 U.S.C. § 1106.

### B.

Though the Participants accuse FirsTier of violating the prudent man standard of care, analysis of whether FirsTier breached this fiduciary duty must begin with a prohibited transaction issue. An ERISA fiduciary may not cause a plan to engage in a transaction "if he knows or should know that such transaction constitutes a direct or indirect ... extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1). LPC and the Participants are "parties in interest" to the LPC Plan. *See* 29 U.S.C. § 1002(14)(C), (H). Thus, absent an exemption, the April 1987 plan participant loans were prohibited transactions—direct loans from the Plan to the Participants, and arguably indirect loans from the Plan to LPC.

However, 29 U.S.C. § 1108(b)(1) exempts from the prohibitions of § 1106

[a]ny loans made by the plan to ... participants or beneficiaries of the plan if such loans (A) are available to all such participants and beneficiaries on a reasonably equivalent basis, (B) are not made available to highly compensated employees (within the meaning of section 414(q) of Title 26), in an amount greater than the amount made available to other employees, (C) are made in accordance with specific provisions regarding such loans set forth in the plan, (D) bear a reasonable rate of interest, and (E) are adequately secured.

Paragraph 20 of the LPC Plan specifically authorized plan participant loans that met the above-quoted statutory requirements. Paragraph 20 provided that LPC could direct the trustee to make such loans, that the Plan's Administrative Committee would establish the terms and conditions of the loans, and that the trustee would fix the manner of repayment and would set a "reasonable rate of interest."

The district court found that the April 1987 loans were made in compliance with paragraph 20 of the Plan and with § 1108(b)(1). Therefore, FirsTier satisfied its fiduciary duty under § 1103(a) to ensure that LPC's directions and the resulting loans "were made in accordance with the terms of the plan and ... not contrary to [ERISA]." The court also found that FirsTier had no knowledge that the Participants would lend the loan proceeds to LPC and no knowledge that LPC would use that money to repay FirsTier.

The Participants do not challenge these findings on appeal. Rather, they concede the facial validity of the April 1987 participant loans under § 1108(b)(1) but allege that FirsTier violated ERISA's "prudent man standard of care"[4] by failing to investigate the underlying purpose of these loans. This duty to inquire arose, they contend, because FirsTier had rejected an improper attempt to substitute Dombrowski as trustee and knew LPC was in financial difficulty and deeply in debt to FirsTier. Had FirsTier bank inquired, the argument continues, it would have learned that Dombrowski had coerced the Participants to transfer the loan proceeds to LPC so that it could pay down its debt to FirsTier. This was a prohibited transaction by fiduciary Dombrowski which created a conflict of interest for FirsTier as both Plan trustee and LPC creditor. Therefore, the argument concludes, had FirsTier

learned the purpose of the participant loans, it would have refused LPC's direction to make them.

■■■ Although the Participants cite no relevant authorities, we have found at least some support in the trust law treatises for the duty to inquire they seek to impose:

The trustee is not necessarily justified in complying with the directions of the holder of the power merely because he does not actually know that the latter is violating his duty as fiduciary.... He is ordinarily under a duty to make a reasonable inquiry and investigation in order to determine whether the holder of the power is violating his duty.

IIA *Scott on Trusts* § 185, at p. 575. But we doubt this is the "ordinary" situation referred to. For here FirsTier made the loans not only at the direction of fiduciary Dombrowski, but also at the request of the Participants themselves. When acting at the direction of the ultimate beneficiary of a trust, the trustee's fiduciary duty is satisfied if it simply complies with a direction that does not violate the terms of the trust. *Id.* at p. 574. Translating these general trust principles to ERISA, we find nothing in the statute suggesting that, to be prudent, a trustee must ask the recipients of participant loans that are exempt under § 1108(b)(1) the purpose for which they are lawfully borrowing their share of the plan's assets. *Cf. Brock v. Walton*, 794 F.2d 586 (11th Cir.1986).

■■■ The Participants cite no ERISA or common law trust cases for the duty to inquire they seek to impose.[5] Their argument boils down to this: because FirsTier properly refused to allow Dombrowski to gain direct control of the Plan assets for the benefit of LPC, FirsTier had a duty to make sure that Dombrowski did not enlist the aid of the Participants to indirectly achieve his objec-

---

4. "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

5. Cases such as *Whitfield v. Cohen*, 682 F.Supp. 188 (S.D.N.Y.1988), holding that trustees have a duty to investigate proposed investments are distinguishable because they involved discretionary acts by fiduciaries who retained control of the trust assets. Here, FirsTier was directed by another fiduciary to relinquish control of the loan proceeds to their ultimate beneficiaries.

tive. But the Participants' real quarrel is with paragraph 20 of the Plan, which permitted LPC to direct participant loans which its employees could then use for a variety of high-risk purposes that the trustee could not prudently undertake on their behalf. Because FirsTier obeyed the Plan and the statute, the Participants may not shift to FirsTier responsibility for their own subsequent loss of the loan proceeds, or for the unknown misdeeds of another fiduciary, Dombrowski. Thus, on the specific facts of this case, we agree with the district court that FirsTier had no duty to inquire.[6]

The district court also expressly found that Dombrowski did not coerce the Participants into lending the participant loan proceeds to LPC. Dombrowski testified that he did not threaten his employees; he simply asked for their help because LPC needed cash to pay down its bank loans so that it could obtain new financing for the upcoming construction season. Although the record might also support a contrary finding, the district court's finding of no coercion is not clearly erroneous. Absent such coercion, there was no breach of fiduciary duty by any fiduciary.[7]

For the foregoing reasons, we agree with the district court that FirsTier breached no ERISA fiduciary duty in making the April 1987 loans to the Participants.

### III. The Award of Fees and Expenses to FirsTier.

█ The district court awarded FirsTier a $64,912.44 attorney's fee from the Plan for defending against the Participants' claims. ERISA expressly authorizes a plan to permit "reimbursement of expenses properly and actually incurred, in the performance of [a fiduciary's] duties with the plan." 29 U.S.C.

§ 1108(c)(2). Paragraph 10(i) of the LPC Plan provides:

> The Trustee shall have a lien upon the trust funds for any costs, attorney fees, and other expenses incurred as a result of any suit or proceeding regarding the trust fund to which the Trustee is a party or is reasonably required to take action, except where it is finally determined that the Trustee has breached its duties.

The district court found that FirsTier satisfied this provision and that the requested fee was "reasonable and necessarily incurred."

Plaintiffs argue that the district court erred in not applying our five-factor test for awarding fees in *Lawrence v. Westerhaus*, 749 F.2d 494 (8th Cir.1984). *Westerhaus* involved the award of fees against an adverse party under 29 U.S.C. § 1132(g), whereas this case involves an award of fees from the Plan for performing Plan-related duties. There is "no statutory or common-law basis for denying fees to a *prevailing* trustee where the trust documents specifically contemplate such reimbursement." *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir.1988) (emphasis in original), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); *see* III *Scott on Trusts* § 188.4, at p. 66–67. The voluntary contractual approach of § 1108(c)(2) should ultimately benefit ERISA participants and beneficiaries, for such fee-shifting provisions "make it easier for pension plans to engage the services of persons unwilling or unable to bear the costs of legal contests." *Packer Engineering, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir.1992).

Of course, like the law of trusts, § 1108(c)(2) leaves an important role for judicial discretion by permitting reimbursement of "expenses properly and actually incurred." Here, the district court recognized it had

---

**6.** FirsTier's dual role as both creditor of LPC and trustee of the Plan does not alter this conclusion given the district court's findings. "[W]here a bank has both a trust department and a commercial department, there is inevitably built into the situation the possibility of conflicts of interest. This does not make all transactions by the trust department voidable when there is a conflict of interest, but only those in which the bank has been influenced by a desire to promote its own interests, rather than those of the beneficiaries of the trusts." IIA *Scott on Trusts* § 170.23A.

**7.** *See* the Department of Labor's comments in adopting final regulations under § 1108(b), 54 Fed.Reg. 30,519, 30,521 (1989). These regulations are prospective only and do not govern this case. *See* 29 C.F.R. § 2550.408b–1(g). We have looked to the regulations and the Department's comments for general guidance but have not considered either their validity or how they might affect the issues decided in this case.

that discretion and expressly found that the awarded fees and expenses were "reasonable and necessarily incurred." In addition, we are advised that the Plan accounts of other LPC employees have been distributed, so that only the Participants' accounts will be charged for the litigation expenses they caused the trustee to incur. In these circumstances, the award to FirsTier was not an abuse of discretion.

### IV. The ERISA Claim Against Silence.

The Participants argue on appeal (i) that non-fiduciaries such as Silence are liable for aiding and abetting breaches of ERISA fiduciary duties, and (ii) that the district court clearly erred in finding that Silence had no knowledge that Dombrowski orchestrated the improper loan of Plan assets to LPC. The first half of this equation is dubious at best. The Participants primarily seek damage relief. Under *Mertens v. Hewitt Associates,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), damages may not be recovered against ERISA non-fiduciaries.

Even if the Silence could be liable for aiding and abetting a breach of fiduciary duty, the Participants' claims were properly dismissed. As we have already noted, the court's finding that Dombrowski did not coerce the Participants into making the loans to LPC makes it doubtful, at best, that any fiduciary duty was breached. Moreover, Silence testified that he was not aware of Dombrowski's scheme to have participant loan proceeds loaned to LPC until after the fact. Given the circuitous route the funds travelled in getting from the Plan to LPC, this finding is not clearly erroneous.

For these reasons, the Participants' claims against Silence are both legally and factually deficient.

### V. The Rule 11 Sanction.

The district court imposed a Rule 11 sanction against the Participants personally and their attorney, Bachman, because their claims against Silence "were not well grounded in fact." The court did not explain the basis for this conclusion, except insofar as its reasoning can be inferred from the findings

of fact it made in dismissing the claims against Silence.

Based upon our review of the trial testimony, it is apparent that, prior to trial, attorney Bachman could have expected the Participants' witnesses to present at least two favorable pieces of evidence against Silence. First, LPC's bookkeeper, Gerald Bofenkamp, would testify that employee Duane Olsen (Participant Olsen's deceased husband) told Bofenkamp before the loans were made that Silence had convinced Olsen to borrow from the Plan and lend the proceeds to LPC. Second, Dombrowski would testify that he told Silence on the day the participant loans were made that the loan proceeds would be transferred to LPC and used to repay FirsTier. At trial, Silence denied these statements, and the district court found Silence credible. But that is of little relevance to the Rule 11 inquiry.

It is true that Bachman had no evidence that Silence as LPC financial consultant also acted as a Plan fiduciary. But when the Participants asserted their third party claims, and even when the case went to trial, their theory that a non-fiduciary could be liable in damages under ERISA for aiding and abetting a fiduciary's breach of duty was an open issue in this circuit. *See Consolidated Beef Indus., Inc. v. New York Life Ins. Co.,* 949 F.2d 960, 965 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). In these circumstances, while we agree that the Participants' case against Silence was exceedingly thin, we conclude that it had enough factual and legal support to render the district court's unexplained Rule 11 sanction an abuse of discretion.

We have carefully considered the other issues raised by the Participants on appeal and conclude they are without merit. The award of $8,627.60 to Silence as a Rule 11 sanction is reversed. In all other respects, the judgment of the district court is affirmed.