40 F.3d 264
 63 USLW 2368, 18 Employee Benefits Cas. 2585,
Pens. Plan Guide P 23902Z
 Anthony T. MANIACE, on behalf of themselves and all other
participants, former participants and beneficiaries of The
Juvenile Shoe Corporation of American Employee Stock
Ownership Plan similarly situated; James O. Marquie, on
behalf of themselves and all other participants, former
participants and beneficiaries of The Juvenile Shoe
Corporation of American Employee Stock Ownership Plan
similarly situated, Plaintiffs-Appellants,
v.
COMMERCE BANK OF KANSAS CITY, N.A., Defendant-Appellee.
 No. 94-1212.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1994.
Decided Nov. 8, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Dec. 19, 1994.
 
 1
 Sandra Craig, St. Louis, MO, argued (Daniel J. Schwartz, St. Louis, MO, and Ronald E. Mitchell, on brief), Joplin, MO, for appellant.
 
 
 2
 James Borthwick, Kansas City, MO, argued, for appellee.
 
 
 3
 Before McMILLIAN, and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.
 
 
 4
 BOGUE, Senior District Judge.
 
 
 5
 Participants in employee stock ownership plan appeal the district court's[1] order dismissing their claims upon summary judgment in favor of trustee Commerce Bank of Kansas City. For the reasons stated below, we affirm.
 
 BACKGROUND
 
 6
 In 1979, the Juvenile Shoe Company (JSC) converted its existing profit-sharing plan into an employee stock ownership plan (ESOP). To form the ESOP, JSC executed two separate documents: The Employee Stock Ownership Plan and the Employee Stock Ownership Plan Trust ("Plan" and "Trust"). Under the Plan, the JSC Board of Directors was to appoint an Administrative Committee (Committee) to manage and administer the ESOP. This Committee was given a broad grant of powers under the Plan and was specifically designated as both the "named fiduciary" and "plan administrator" for purposes of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1461. It was further provided that the Plan policy would be to invest in JSC stock and said stock would be the Plan's primary asset.
 
 
 7
 Appellee Commerce Bank of Kansas City (Commerce) was designated as Trustee of the ESOP in the Trust agreement. Various provisions of the Trust granted general responsibilities, powers, and authority to the Trustee, permitting it to invest in savings accounts, certificates of deposit, JSC stock, real estate, securities of companies other than JSC, bonds or mortgages. Critical to the present appeal, the foregoing general grant of authority to the Trustee was limited with respect to JSC stock by Paragraph 5 of the Trust, which stated:
 
 
 8
 Anything herein to the contrary notwithstanding the Trustee shall as directed by the Committee, from time to time, and upon such terms and conditions as directed by the Committee, purchase, sell, retain, distribute or otherwise act with respect to Company Stock ... The Trustee's duties and responsibilities with respect to the purchase, sale, retention, distribution or other action with respect to Company Stock ... shall be limited to effecting the direction of the Committee, discretionary, fiduciary responsibility with respect to such matters being hereby allocated to the Committee. (emphasis added)
 
 
 9
 Throughout the 1980s the sales, net worth, and profits of JSC generally declined. In 1982 Gale Pate, Jr. (Pate) succeeded his father as company president and CEO. Pate was apparently an ineffective CEO and upon his own motion, the JSC Board of Directors named Charles Allison (Allison) as company president. Allison initiated changes in JSC policy, including an expansion into the retail shoe business. As a method of cutting costs, JSC management asked for wage concessions from union employees which precipitated a lengthy and costly labor strike. Attempts to secure foreign sources to fill shoe orders during the strike were disastrous; the replacement products being of poor quality and delivered late to JSC customers.
 
 
 10
 Relationships among high-ranking JSC officials progressively deteriorated, as did the financial status of the company. Pate was discharged by the Board as CEO and subsequently attempted to call a special shareholders meeting to remove the Board. The proxy fight was eventually aborted and no meeting ever took place. In September 1988, Allison was fired by the Board. A consulting firm was brought in to turn JSC around or sell it. Several proposals for the sale of all or part of JSC were prepared and presented to the Board. The only proposal accepted by the Board was the sale of one retail chain held by JSC. JSC filed for Chapter 11 bankruptcy protection in March 1989 and eventually filed for Chapter 7 bankruptcy in August 1989. The JSC stock in the ESOP was rendered worthless.
 
 
 11
 Commerce took an essentially hands-off approach to the business problems encountered by JSC. As part of its trustee responsibilities, Commerce annually reviewed JSC's financial statements. When it received the 1987 financial statement in early 1988, it noted that JSC had lost $3 million the previous year. A meeting was held between JSC officials and members of Commerce's trust department. Commerce's concerns regarding JSC's financial health were not quelled and communication problems between the parties in existence at the time of the meeting increased thereafter. Commerce submitted its resignation as Trustee on July 12, 1988, effective sixty days thereafter. As of September 6, 1988, the Trust assets were insufficient to pay out participant's benefits.
 
 
 12
 Appellants filed the present lawsuit alleging that Commerce failed to fulfill its fiduciary obligations as Trustee to prudently manage and protect Plan assets. Appellants further alleged that Commerce breached fiduciary obligations when it knew of, but failed to remedy, breaches of fiduciary duty committed by the Committee, thereby enabling the Committee to commit further breaches. The appellant's primary accusations appear to involve Commerce's retention of large amounts of JSC stock as Plan Trustee despite the stock's declining value, as well as Commerce's overall lack of participation in company finances and management feuds. The district court found no fiduciary duties existed with respect to the JSC stock and granted Commerce's motion for summary judgment dismissing the action. The district court further found the appellants asserted no facts which would indicate a breach on the part of the Committee or that Commerce knew of any such breach.
 
 DISCUSSION
 
 13
 We apply de novo review to a grant of summary judgment. United States v. Tharp, 973 F.2d 619, 620 (8th Cir.1992). In reviewing the matter, the facts are to be viewed in the light most favorable to the nonmoving party, who is to be given the benefit of all reasonable inferences which may be made from the facts disclosed in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 14
 Labels are important in making a determination of this matter. With respect to trustees, ERISA outlines the duties and ability of plans to allocate the same. 29 U.S.C. Sec. 1103(a)(1), states in part:
 
 
 15
 [T]he trustee ... shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that--
 
 
 16
 (1) the plan expressly provides that the trustee or trustees are subject to direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and are not contrary to this chapter ...
 
 
 17
 There is no dispute that Commerce was a "directed trustee" with respect to the JSC stock in the ESOP and that the Committee was the "named fiduciary." The problem is what duties are attending the status of directed trustee.
 
 
 18
 Appellants allege Commerce breached fiduciary duties owed to participants in the JSC ESOP outlined in ERISA. 29 U.S.C. Sec. 1104(a)(1)(B), provides in part:
 
 
 19
 [A] fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and-- ...
 
 
 20
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ...
 
 
 21
 Appellants contend that by retaining JSC stock which was declining in value and choosing not to become involved in company financial matters, Commerce violated Sec. 1104 and its "prudent man" standard. The district court granted summary judgment in favor of Commerce as to this claim by concluding that Commerce was not an ERISA fiduciary with respect to the JSC stock held by the ESOP; i.e. because Commerce was not a fiduciary, no fiduciary duties were owing. We agree.
 
 
 22
 A person is an ERISA fiduciary only to the extent that:
 
 
 23
 (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
 
 
 24
 (ii) he renders investment advice for a fee or other compensation ..., or
 
 
 25
 (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 26
 29 U.S.C. Sec. 1002(21)(A). Clearly, discretion is the benchmark for fiduciary status under ERISA. Importantly, a trustee for a plan is not necessarily a fiduciary for the entire plan. "[F]iduciary status under Sec. 1002(21)(A) is not an 'all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.' " Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214 (8th Cir.1993), quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir.1992); American Fed'n of Unions Local 102 v. Equitable Life Assurance Society, 841 F.2d 658, 662 (5th Cir.1988) ("A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control.")
 
 
 27
 While the current Trust document granted general powers to Commerce, paragraph 5 of that document explicitly limits Commerce's discretion vis a vis JSC stock. Commerce had no discretion and could only act at the direction of the Committee. As such, Commerce could not be a fiduciary (nor breach fiduciary duties) with respect to the JSC stock.
 
 
 28
 Notwithstanding Commerce's lack of fiduciary status, as an ERISA directed trustee, it may only act upon directions from the Committee (named fiduciary) "which are made in accordance with the terms of the plan and are not contrary to this chapter ..." 29 U.S.C. Sec. 1103(a)(1). The remaining question in this case is whether Commerce followed this statutory mandate.
 
 
 29
 We find that the appellants have failed to establish that Commerce's handling of the ESOP was contrary to Plan directives or contrary to ERISA. The obligations of a directed trustee are something less than that owed by typical fiduciaries. Commerce was not required to weigh the merits of an investment in JSC stock against all other investment options every time it was directed to purchase said stock by the Committee. Ershick v. United Missouri Bank, 948 F.2d 660, 665 (10th Cir.1991). Section 1103(a)(1) establishes the standard to be followed by directed trustees, and under the present facts it cannot be said that purchase of JSC stock violated the Plan or was contrary to ERISA.
 
 
 30
 FirsTier Bank, N.A. v. Zeller, 16 F.3d 907 (8th Cir.1994), does not command a different conclusion. In FirsTier we faced a situation in which the trustee bank had general fiduciary responsibility for management of all plan assets, but was subject to direction of the plan sponsor to make loans to participants out of plan assets. Loans were in fact made at the sponsor's direction and, following the company's bankruptcy, the bank was sued by borrowing participants for breach of fiduciary duty. The bank defended by claiming to be a directed trustee with no attendant fiduciary responsibilities. Trustee responsibilities in that case were significant, with the bank being "authorized and directed to hold, manage, invest, and account for all plan assets." Id. at 911 (emphasis added). Under those circumstances we concluded that the ERISA section defining duties of directed trustees "modifies, but ... does not eliminate the trustee's fiduciary duty when handling plan assets." Id. We found the "prudent man standard of care" remained despite the bank's status as a directed trustee. Id.
 
 
 31
 Unlike the situation in FirsTier, Commerce had no discretion nor control with respect to JSC stock, the central asset in the ESOP at issue. As such, Commerce does not fit within the ERISA definition of a fiduciary and their conduct is controlled exclusively by Sec. 1103(a). As previously stated, the appellants have failed to establish that Commerce's conduct at the Committee's direction was not "in accordance with the terms of the plan" or was "contrary to" provisions of ERISA. Imposing any "residual" duties on Commerce would, in effect, abrogate the distinction between trustees and directed trustees clearly intended by ERISA.
 
 
 32
 Appellant's count two alleges Commerce breached fiduciary duties to the Plan when it knew of, but failed to remedy, breaches of fiduciary duty by the Committee and thereby enabled the Committee to commit further breaches. This count, like count one, involves actions or inactions with respect to sale and voting of JSC stock. As previously noted, fiduciary responsibility vis a vis the stock was expressly delegated under plan documents to the Administrative Committee. Commerce's liability for acts of the Committee is judged as follows:
 
 
 33
 Upon delegation of fiduciary duties, the fiduciary is not thereafter liable for the acts or omissions of the person carrying out fiduciary responsibility, except to the extent it participates knowingly in the breach, or fails to act reasonably in discharging it own responsibilities and thereby enables the other fiduciary to commit the breach, or it has knowledge of a breach by such other fiduciary and makes no reasonable efforts under the circumstances to remedy the breach.
 
 
 34
 Presley v. Blue Cross-Blue Shield of Alabama, 744 F.Supp. 1051, 1058 (N.D.Ala.1990) (citing 29 U.S.C. Secs. 1105(a), (c)).
 
 
 35
 To succeed under count two, appellants must initially establish breaches on the part of the Committee in discharging their duties under the Plan. In addition, the appellants must then show that Commerce either participated in said breaches or knew of the breaches and did nothing to remedy them. The district court granted Commerce's motion for summary judgment finding appellants failed to plead or offer facts suggesting that the Committee breached any duty owed to the trust. We agree. Appellant's can cite to no actions of the Committee which would rise to the level of breach of fiduciary duty. The lengthy recitation of options available to Commerce cited in appellant's brief (e.g., sue for injunctive relief in federal court, contact the Department of Labor, bring a derivative shareholder action), is contrasted by the negligible attention devoted to specific misdeeds on the part of the Committee. Because there is nothing to indicate the Committee breached fiduciary duties, let alone that Commerce participated in or knew of such breaches, the district court properly granted summary judgment dismissing this count.
 
 CONCLUSION
 
 36
 For the foregoing reasons, the decision of the district court is affirmed.
 
 
 
 *
 The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the Western Division of the District of South Dakota, sitting by designation
 
 
 [1]
 Honorable Joseph E. Stevens, Jr., United States District Court Judge for the Western District of Missouri, Southwestern Division