**CONSUMERS ENERGY COMPANY, Plaintiff/Counter–Defendant,**

v.

**SMITH BARNEY CORPORATE TRUST COMPANY, and Salomon Smith Barney, Inc., Defendants/Counter–Claimants/Third–Party Plaintiffs,**

v.

**Comerica Bank, Third–Party Defendant.**

**No. CIV. 02–40031.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 6, 2004.

Michael G. Wilson, Consumers Energy Co., Jackson, MI, for Consumers Energy Co., Plaintiff.

Dennis K. Egan, Butzel Long, Bloomfield Hills, MI, Angela E. Boufford, Butzel Long, Bloomfield Hills, MI, Bloomfield Hills, MI, for Smith Barney Corporate Trust Co., Salomon Smith Barney, Inc., Defendants.

### OPINION AND ORDER DENYING (1) PLAINTIFF'S SUMMARY JUDGMENT MOTION AND (2) THIRD–PARTY DEFENDANT'S SUMMARY JUDGMENT MOTION

GADOLA, District Judge.

This is a breach-of-fiduciary duty action under Employee Retirement Income Security Act (hereinafter "ERISA"), and it concerns a dispute over the liquidation of some $32,000,000.00 in assets.

Consumers Energy (hereinafter "Consumers") is the Plaintiff. Smith Barney Corporate Trust Company (hereinafter "SBCT") and Salomon Smith Barney, Inc., (hereinafter "SSBI") are the Defendants. Additionally, SBCT and SSBI are the Counter–Claimants, and Consumers is the Counter–Defendant. Further, SBCT and SSBI are also the Third–Party Plaintiffs, and Comerica Bank (hereinafter "Comerica") is the Third–Party Defendant.

Before the Court are two summary judgment motions: one filed by Consumers, and one filed by Comerica. The Court held a hearing on the matter on June 23, 2004. For the reasons set forth below, the Court will deny each summary judgment motion.

### I. BACKGROUND

Consumers is the plan administrator for two ERISA-protected employee benefit plans: an employee savings plan and an employee pension plan. See 29 U.S.C. § 1002(34)-(35). The assets of the two

plans are managed by numerous investment managers. One manager was SBCT. SSBI is a corporate entity related to SBCT.

At the heart of this dispute is a letter, dated August 23, 2001, from Don Forsblom, the retirement benefits director for Consumers. The August 23 letter informed SBCT that Consumers had selected Comerica to become the new trustee and custodian for the aforementioned savings and pension plans.

Specifically, the body of the August 23 letter reads, in its entirety, as follows:

Consumers Energy has completed an agreement with Comerica Bank of Detroit, Michigan to become successor trustee *and custodian* for [the Consumers Energy Employees' Savings & Incentive Plan and the Consumers Energy Pension Plan] with an effective date of October 1, 2001. The person at Comerica that is to be contacted for information about this transition is James S. Adkins. Jim can be reached by phone at 1–313–222–9888. On behalf of Consumers Energy, I would like to thank you in advance for your cooperation.

Pl.Ex. 19 (emphasis added).

As acknowledged by Forsblom in his deposition, there are at least two types of custodians in this situation. *See* Forsblom Dep. at 9–10. First, there is a general custodian that has control over a general pool of assets. *See id.* One function of such a general custodian is to hold large cash balances for the plans on a short-term basis. *See id.* at 132–33. Second, there are individual custodians that have control over individual securities. *See id.* at 9–10.

At the time of the August 23 letter, the trustee and general custodian for Consumers's savings and pension plans was State Street Bank and Trust Company (hereinafter "State Street"). Additionally, at the time of the August 23 letter, SBCT was one of a number of individual custodians for the savings and pension plans: each plan was invested in an individual security managed by SBCT called the International Equity Fund. *See id.* at 9–10; Pl. Exs. 15–16; Logue Dep. at 21–22, 86; Pl. Reply Br. at 3.

The bare text of the August 23 letter states that Consumers had selected a new custodian in addition to a new trustee. The letter, however, does not explicitly indicate the type of custodian at issue. Further, the letter does not state who (i.e., which custodian) was being replaced. As a consequence, there was a miscommunication and/or a misunderstanding between Consumers and SBCT. This miscommunication and/or misunderstanding is the source of this lawsuit.

SBCT acted on the letter as if it, as an individual custodian, was being replaced. The International Equity Fund is a proprietary product unique to SBCT, and it cannot be transferred to a different individual custodian. *See* Forsblom Dep. at 35–36; Logue Dep. at 89–90, 125–26. In other words, it was an investment fund that could only be bought, held, and sold by SBCT. *See* Forsblom Dep. at 35–36; Logue Dep. at 89–90, 125–26. Accordingly, since SBCT believed that it was being replaced and since the International Equity Fund could not be held by another individual custodian, SBCT proceeded to liquidate the savings and pension plans' positions in the International Equity Fund, to close their respective accounts, and to wire the cash proceeds to Comerica. SBCT contends that its understanding of the August 23 letter and its subsequent actions closing the accounts were supported by several post-August 23 communications, both oral and written, between SBCT and Consumers as well as between SBCT and Comerica.

The liquidation occurred on Friday, September 28, 2001, and the cash proceeds were wired to Comerica on Monday, October 1, 2001. *See* Pl. Exs. 29–30; Def. Ex. 10. The savings plan's proceeds from the liquidation were $15,666,757.45, and the pension plan's proceeds were $16,831,028.02 (for a total amount of $32,497,785.47). *See* Pl. Exs. 29–30.

Consumers contends that this liquidation was a mistake. Consumers maintains that the August 23 letter was merely a notification that Comerica was replacing State Street as trustee and general custodian. *See* Forsblom Aff. at ¶ 16. According to Consumers, it had no intention of terminating its accounts with SBCT. *See id.* at ¶ 15. Consumers sent nearly-identical letters to some twenty other investment managers for the savings and/or pension plans on August 23, 2001, and none of the other managers liquidated assets as SBCT did. *See id.* at ¶ 16; Pl.Ex. 20.

Consumers learned of the details of the liquidation on October 12, 2001. After unsuccessful attempts to resolve the matter, Consumers reinvested the savings and pension plans' liquidation proceeds in a comparable international investment fund with a different investment manager, Credit Suisse, on October 26, 2001. *See* Forsblom Dep. at 93.

Consumers, as a fiduciary to the savings and pension plans, instituted this action on February 2, 2002. *See* 29 U.S.C. § 1002(21); 29 U.S.C. § 1102; 29 U.S.C. § 1132(a)(3). The complaint contained three counts. In count one, Consumers alleges that, in liquidating the plans' assets, SBCT, as well as SSBI, committed a breach of fiduciary duty under ERISA. *See* 29 U.S.C. § 1104; 29 U.S.C. § 1109. Consumers seeks restitution in the amount of $1,873,848.84, claiming that this amount represents the profits that the savings and pension plans would have earned between October 1, 2001, and the date of reinvestment on October 26, 2001. *See* Logue Rep. at ¶ 20. Note that these events occurred shortly after the terrorist attacks of September 11, 2001, which was a period of heightened market volatility.

Additionally, counts two and three were, respectively, a negligence claim and a breach of contract claim. On March 4, 2002, the Court declined to exercise supplemental jurisdiction over these state law claims and dismissed these claims without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(2).

On May 10, 2002, SBCT and SSBI filed their answer and affirmative defenses. At the same time, they filed a two-count counterclaim against Consumers: count one, "indemnification and hold harmless," and count two, breach of fiduciary duty. Each count is a contingent claim; that is, each count seeks relief only if SBCT and SSBI are held liable under the complaint. Further, SBCT and SSBI filed a one-count third-party complaint against Comerica alleging breach of fiduciary duty. This claim is also contingent; it requests relief only if SBCT and SSBI are held liable to Consumers. SBCT and SSBI deny that they breached any fiduciary duties, and, alternatively, the basic theory of the counterclaim and third-party claim is that any breach of fiduciary duty by SBCT and/or SSBI was caused by the actions and/or omissions of Consumers and/or Comerica. Additionally, SSBI argues that it is not even a fiduciary in this situation and thus disclaims all liability to Consumers.

Before the Court are two dispositive motions. First, Consumers seeks summary judgment on its claims against SBCT and SSBI and, implicitly, on SBCT and

SSBI's counterclaims against Consumers. Specifically, Consumers seeks a judgment of $1,873,848.95 in restitution plus prejudgment interest, costs, and attorney fees. Second, Comerica seeks summary judgment on SBCT and SSBI's third-party claim against Comerica. SBCT and SSBI have not moved for summary judgment on any claim.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Com'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to

the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

### A. Consumers's Summary Judgment Motion

In its summary judgment motion, Consumers set forth its breach-of-fiduciary claim as follows: "Defendants failed to act with care, skill and prudence when they sold more than $32 million worth of plan investments without any request or authorization to do so." Pl. Mot. at 20; *see also* 29 U.S.C. § 1104(a)(1)(B); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir.1999).

 However, viewing the facts and drawing all reasonable inferences therefrom in a light most favorable to SBCT and SSBI, the nonmoving parties, there are two primary issues of material fact in this case: (1) whether SBCT failed to act with care, skill, and prudence when it sold more than $32,000,000.00 worth of plan investments; and (2) whether SBCT sold more than $32,000,000.00 worth of plan investments without any request or authorization to do so. Consequently, the Court will deny Consumers's summary judgment motion.

As discussed above in the background section, SBCT believed that it, as an individual custodian, was being replaced.

That belief coupled with the fact that SBCT's International Equity Fund was a proprietary product that could not be held by another individual custodian, resulted in SBCT's further belief that a liquidation of assets was necessary. Evidence presented by Consumers—especially Forsblom's deposition and affidavit as well as the fact that all other recipients of the August 23 letter did not liquidate assets as SBCT did—indicates that SBCT misunderstood the August 23 letter. However, as detailed below, SBCT has presented evidence that it communicated on several occasions with Consumers about the August 23 letter, and that, in those communications, Consumers did nothing to correct SBCT's misunderstanding despite opportunities to do so. More important, as detailed below, SBCT has presented evidence that, through those communications, Consumers actually furthered SBCT's misunderstanding of the August 23 letter and even authorized the liquidations at issue.

The August 23 letter was addressed to Mercer Cook of Salomon Smith Barney Capital Management, which was a subunit of SSBI. Additionally, Consumers copied the letter to, among others, Kelly Torello of SBCT. *See* Pl.Ex. 19. Torello was SBCT's primary actor in this matter, and a significant amount of her actions in response to the letter are in dispute.

Upon receipt of the letter, Torello shared the letter with her direct supervisors, and, due to the size of the accounts, they discussed the matter with SBCT's chief executive officer. *See* Torello Dep. at 55. Thereafter, Torello's supervisors instructed her to send Consumers SBCT's standard letter detailing what was needed to close an account, and they instructed her to telephone Consumers. *See id.* at 55–56.

According to Torello's deposition, she telephoned Sharon Best at Consumers on

August 31, 2001. *See id.* at 43–44, 54–56. Best served as a financial analyst for Consumers's savings and pension plans, and she was one of only five individuals authorized in writing by Consumers to issue instructions regarding each plan's assets. *See* Def. Ex. 6; Forsblom Dep. at 108–09. According to Torello, she advised Best that SBCT received the August 23 letter and that SBCT would be sending a letter informing Consumers "exactly what was needed in order to close the account—[to] do the liquidation." Torello Dep. at 44. According to Torello, she explained to Best why SBCT believed that the requested change of custodianship "require[d] a liquidation." *Id.* In this conversation, Best said nothing to indicate that Consumers did not want to liquidate its accounts; in fact, according to Torello, Best confirmed to Torello that "Consumers was closing its accounts with [SBCT]." *Id.* at 54. In her deposition, Best confirmed she had multiple telephone conversations with Torello in August and September 2001, but, according to Best, she has no specific recollection of this particular telephone conversation on August 31. *See* Best Dep. at 43–45.

On September 4, 2001, Torello responded directly to Forsblom with a letter informing him of the items and information needed to close an account with SBCT. *See* Def. Ex. 1. Torello's September 4 letter clearly exhibited SBCT's understanding that Consumers wanted to terminate the savings and pension plans' accounts with SBCT. The body of the September 4 letter reads, in its entirety, as follows:

> Please be advised that [SBCT] requires the following items to close an account:
> — Original instructions for transfer from an authorized signer of the plan specifying liquidation date, transfer date and transfer instructions.
> It is required that we have original signed documents. **Please note that we require these documents five business days prior to [the] liquidation date.** If you have any question, please feel free to call me at (302)573–5970.

*Id.* (emphasis in original).

Best, at her deposition, admitted that the September 4 letter, which employed the terms "close" and "liquidation," indicated that SBCT understood that Consumers wanted to terminate the accounts. *See* Best Dep. at 50–52. Nonetheless, in the weeks that followed, Best, Forsblm, and Consumers did not inform SBCT that its understanding exhibited in the September 4 letter was incorrect. Why? According to Forsblom and Best, they do not recall receiving the September 4 letter. *See* Forsblom Dep. at 152–54; Best Dep. at 47–49; Forsblom Aff. at ¶ 19. Despite their purported lack of recollection, Forsblom and Best admitted that the September 4 letter was stamped as received at Consumers on September 10, 2001, that it was also stamped with both of their initials, that their respective initials were crossed-out, and that such handwritten markings indicated that the letter had been received and read by Forsblom and Best. *See* Def. Ex. 1; Forsblom Dep. at 152–54; Best Dep. at 47–49.

Additionally, according to Torello, she telephoned Best a second time, and this second conversation occurred on September 5, 2001. *See* Torello Dep. at 64–66, 71–72. According to Torello, during this telephone conversation, Best advised Torello that the accounts were to be liquidated on September 28, 2001. *See id.* Torello recorded this instruction by writing "Per Sharon liquidate 9/28," on the outside of Torello's file folder in this matter. Pl.Ex. 42; *see also* Torello Dep. at 64–66, 71–72. Although Best confirmed at her deposition that she had multiple telephone conversations with Torello in August and September 2001, she has no

specific recollection of this particular telephone conversation on September 5, and she disputes any discussions concerning liquidations. *See* Best Dep. at 43–45, 49–54.

Furthermore, despite his assertion that he does not have any recollection of receiving and reading the aforementioned September 4 letter, Forsblom sent a letter to Torello dated September 12, 2001, two days after the September 4 letter was received by Consumers. *See* Def. Ex. 7. The body of Forsblom's September 12 letter to Torello states, in its entirety:

> In reference to our letter of August 23, 2001, advising that Comerica Bank of Detroit will become the successor trustee and custodian for the Consumers Energy Employees' Savings and Incentive Plan and the Consumers Energy Pension Plan, this is your authorization to transfer trusteeship of the records of [SBCT] for the above-referenced plans. On October 1, 2001, trusteeship should be transferred from State Street Bank and Trust to Comerica Bank per instructions provided by them.
>
> The current Trust ZG2G (State Street Bank and Trust) for the Savings and Incentive Plan will be transferred to Trust 02–01–100–0737330 (Comerica Bank) and the Smith Barney assets held in the current Pension Trust ZG1J (State Street Bank) will be transferred into Trust 02–01–100–0737275 (Comerica Bank). If you have additional questions, feel free to contact us.

*Id.* This September 12 letter appears to be a direct response to Torello's September 4 letter as well was Torello's telephone inquiries to Best. *See* Def. Br. at 12 n. 13. Note that Forsblom's September 12 letter was copied to Best. *See* Def. Ex. 7.

Next, according to Torello, after she received the September 12 letter, she telephoned Best a third time, and this conversation occurred on or about September 18, 2001. *See* Torello Dep. at 66. According to Torello, she advised Best that she received Forsblom's September 12 letter but that SBCT still required wire instructions for the transfer of cash proceeds from the upcoming liquidation. *See id.* at 65–67. According to Torello, Best then provided Torello with the name and telephone number of David Jones at Comerica from whom Torello could obtain the necessary wire information. *See id.* at 66–67. As with the first two conversations, Best stated at her deposition that she had no specific recollection of this particular telephone conversation on or about September 18. *See* Best Dep. at 43–45, 54.

Then, on or about September 19, 2001, Torello telephoned Jones. *See* Torello Dep. at 66–67. Torello explained to Jones that she was calling from SBCT and that Best at Consumers had provided his name and telephone number to obtain wire instructions for the transfer of liquidation proceeds from Consumers's savings and pension plans. *See id.* at 66–68; Jones Dep. at 29–30. On September 20, 2001, Jones faxed Torello an altered copy of a letter dated September 5, 2001, from Jones to Cook at Salomon Smith Barney Capital Management that contained the necessary wire instructions. *See* Jones Dep. at 29–33; Def. Ex. 8. It was altered in that Jones deleted Cook's name and added Torello's name at the top of the letter; Jones left the September 5 date on the letter, however. *See* Jones Dep. at 32–33; Def. Ex. 8 at 2. Jones's September 20 fax cover sheet indicates that the purpose of the fax was "wire instructions and copy of letter sent." Def. Ex. 8 at 1.

On September 25, 2001, Torello had a second telephone conversation with Jones. *See* Torello Dep. at 69–70; Jones Dep. at 36. Torello advised Jones that the faxed letter included only one Comerica account

number, and she "wanted to know whether [SBCT was] to wire the funds into two separate accounts." Torello Dep. at 69. Jones then gave Torello the second Comerica account number for the Consumers's savings plan. *See id.* at 69–70; Def. Ex. 14 at 2.

The liquidations then occurred on September 28, 2001, and the cash proceeds were wired to Comerica on October 1, 2001. *See* Pl. Exs. 29–30; Def. Ex. 10. On October 2, 2001, Jones telephoned Torello to acknowledge Comerica's receipt of the funds. *See* Torello Dep. at 70.

As stated above, in considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party, and the Court is not permitted to judge the evidence or make findings of fact. *See 60 Ivy St.*, 822 F.2d at 1435–36. Although Consumers disputes much of Torello's deposition testimony, the Court is not permitted to ignore this evidence. *See id.* Applying the summary judgment standard to the evidence detailed above, Consumers has failed to conclusively show that there is no genuine issue of material fact. The above-cited evidence recounting the actions of Torello, Best, Forsblom, and Jones demonstrates that there are two central issues of material fact in this case: (1) whether SBCT failed to act with care, skill, and prudence in this matter; and (2) whether SBCT sold more than $32,000,000.00 worth of plan investments without any request or authorization to do so. In other words, whether or not SBCT acted reasonably and with Consumers's authorization in this matter are factual disputes to be resolved at trial. Consequently, the Court will deny Consumers's summary judgment motion.

■■■ Furthermore, in addition to these two central issues for trial, there are three secondary issues that preclude an award of summary judgment to Consumers. First, as raised in the counterclaim and as suggested by the evidence detailed above, there is a genuine issue about whether Consumers caused the liquidation. *See* Def. Br. at 23–27. Second, there is a genuine question about whether $1,873,848.84 is the correct amount of damages: for instance, whether the post-liquidation actions of Consumers and Comerica, e.g., waiting from October 1 or October 12 until October 26 to reinvest the liquidation proceeds caused the damages to be greater than they otherwise would have been had Consumers and/or Comerica acted faster and/or more appropriately to minimize or even eliminate the losses. *See* Def. Br. at 13–15, 25–30. Third, although Consumers in its motion treats SBCT and SSBI as one entity, they are clearly not a single entity;[1] thus, there is an issue about whether SSBI is a fiduciary in this action, i.e., whether the relationship between SBCT and SSBI was sufficient for SSBI to be held liable to Consumers in this action. *See* Def. Br. at 30–33. Accordingly, these three secondary issues present further grounds to deny summary judgment.

### B. Comerica's Summary Judgment Motion

In their third-party complaint, SBCT and SSBI allege that Comerica breached its fiduciary duties to the Consumers's savings and pension plans (1) through its pre-liquidation actions (see the above discussion of communications between Torello

---

1. SBCT and SSBI go so far as to argue that "SSBI should not even be a defendant in this case at all." Def. Br. at 33. Nevertheless, SSBI has not filed a motion to dismiss this action with respect to SSBI.

and Jones), which, according to SBCT and SSBI, constituted "purportedly erroneous instructions and directions" to SBCT regarding Comerica's role as the new custodian for the plans and regarding the transfer of funds to Comerica, and (2) through Comerica's post-liquidation actions including its failure to notify Consumers immediately upon Comerica's receipt of the cash wire transfers totaling in excess of $32,000,000.00 belonging to the plans. Third–Party Claim at ¶ 65.

■ Comerica's sole argument in favor of summary judgment on these claims, is that, in its role as trustee, it did not have discretionary investment authority with respect to the plans' assets and that, as a consequence, it cannot be held liable for the liquidation or any resulting losses. *See* Third–Party Def. Br. at 9. However, as SBCT and SSBI aptly point out, Comerica's argument "entirely misapprehends the nature of [the] thirty-party claims against [Comerica]." Third–Party Pl. Br. at 1.

■ Comerica's lack of discretionary investment authority is not at issue. *See* Third–Party Claim at ¶ 65. It is well-established that ERISA imposes fiduciary duties upon entities in possession and control of plan assets even when such entities lack discretionary investment authority. *See Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999). In *Smith v. Provident Bank*, the United States Court of Appeals for the Sixth Circuit held that a trustee bank was liable as an ERISA fiduciary even though the trustee bank "retained no discretionary authority over the plan and was charged only with the 'ministerial' task of transferring the assets." *Id.; see also Srein v. Frankford Trust Co.*, 323 F.3d 214, 222 (3d Cir.2003) (following *Smith* ); *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir.1994) ("[ERISA] imposes [fiduciary] duties *whenever* one deals with plan *assets*. . . . [This] reflects

the high standard of care trust law imposes upon those who handle money or other assets on behalf of another." (emphasis in original)). Therefore, even though Comerica did not have discretionary investment authority in this situation, Comerica, in the course of its ministerial tasks, still may have breached fiduciary duties owed to the plans, such as the duty to accurately and expeditiously communicate material information to Consumers regarding plan assets. Therefore, Comerica's lack-of-discretionary-authority argument in favor of summary judgment lacks merit.

Additionally, in the aforementioned transition from State Street to Comerica, Comerica was responsible for ensuring that only certain scheduled assets were received by Comerica. According to Jones and his supervisor, Anna Dove, Comerica's "biggest function" at the time was "getting a final asset list from the prior custodian, and then after [the] conversion [reconciling that list] to what [Comerica had] in [its] system." Jones Dep. at 12; *see also* Dove Dep. at 20–21. Despite this duty and despite the fact that Jones realized that Comerica received more than $32,000,000.00 in unexpected assets on behalf of the two plans and reported this fact to another supervisor, Jim Adkins, Comerica took no action upon receipt of the funds—it did not even contact Consumers about the unexpected assets. *See* Jones Dep. at 49–51; Adkins Dep. at 62. Dove testified at her deposition that, if Comerica received unanticipated assets, Comerica—particularly Adkins—had a duty to immediately bring the existence of such unanticipated assets to the attention of Consumers. *See* Dove Dep. at 23–24. Nonetheless, at his deposition, Adkins was unable to explain why Consumers was not immediately contacted about the unexpected assets. *See* Adkins Dep. at 62. As a consequence, Consumers did not learn of

the unexpected assets until October 12, when Best made a routine balance inquiry for Consumers. *See* Forsblom Dep. at 72–73. By this time, the value of SBCT's International Equity Fund had risen markedly. *See id.* at 92–97. As a result, SBCT and SSBI contend that Comerica breached fiduciary duties owed to the plans by failing to immediately inform Consumers of the unexpected assets and thereby allowing more than $32,000,000.00 in cash to sit idle in short-term cash accounts for nearly two weeks causing and/or exacerbating Consumers's losses. As Comerica's summary judgment motion fails to address these issues raised in the third-party complaint, Comerica has failed to meet its burden of showing that no genuine issue of material fact exists. *See 60 Ivy St.,* 822 F.2d at 1435–36. Thus, the Court will deny Comerica's summary judgment motion.

## IV. CONCLUSION

ACCORDINGLY, IT IS HEREBY OR-DERED that Consumers's summary judgment motion [docket entry 27] is **DENIED.**

IT IS FURTHER ORDERED that Comerica's summary judgment motion [docket entry 26] is **DENIED.**

**SO ORDERED.**