**IN RE WORLDCOM, INC.**
**Erisa Litigation**

**This Document Relates to:**

**All Actions**

**No. 02 Civ.4816 DLC.**

United States District Court,
S.D. New York.

June 17, 2003.

Lynn Lincoln Sarko, Gary A. Gotto, Erin M. Riley, Seattle, WA, for Plaintiffs.

George M. Newcombe, Patrick E. King, Simpson Thacher & Bartlett, Palo Alto, CA, Paul Curnin, Simpson Thacher & Bartlett, New York, NY, for Director Defendants.

David Wertheimer, Lyndon Tretter, Hogan & Hartson L.L.P., New York, NY, Evan Miller, Hogan & Hartson L.L.P., Washington, DC, for Bernard J. Ebbers: R. David Kaufman, M. Patrick McDowell, Brunini Grantham Grower & Hewes, PLLC, Jackson, MS, of counsel.

Juliet Rotenberg, Arnold & Porter, Washington, DC, for Defendant Scott Sullivan.

Eliot Lauer, Curtis Mallot Prevost Colt & Mosley, New York, NY, for Defendant Arthur Andersen LLP.

William J. Kilberg, Paul Blankenstein, Gibson, Dunn & Crutcher LLP, Washington, DC, for Defendant Merrill Lynch Trust Co. of America.

## OPINION & ORDER

COTE, District Judge.

The collapse of WorldCom, Inc. ("WorldCom") has led to a plethora of litigation. This consolidated class action seeks recovery for WorldCom employees who invested in WorldCom stock through the company's 401(k) plan. It is premised on violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and names as defendants certain officers, directors and employees of WorldCom, as well as Merrill Lynch Trust Company of America ("Merrill Lynch"), the trustee for the 401(k) plan, and Arthur Andersen LLP ("Andersen"), the accounting firm that audited the WorldCom financials and the 401(k) plan. Litigation brought under the federal securities laws is also before this Court, including a class action that seeks recovery for anyone who traded WorldCom securities during the class period, consolidated under the caption *In re WorldCom, Inc. Securities Litigation* (*"Securities Litigation"*).

At the heart of the WorldCom litigation are allegations that WorldCom and those associated with it disseminated materially false and misleading information in analyst reports, press releases, public statements, and filings with the Securities and Exchange Commission ("SEC"), including registration statements issued in conjunction with WorldCom's note offerings in May 2000 and May 2001. The allegations against WorldCom contend that the company engaged in a series of illegitimate

accounting strategies in order to hide losses and inflate reported earnings to meet increasingly unrealistic earnings projections. WorldCom's accounting manipulations and dissemination of material misrepresentations are alleged to have affected the price of its securities and to have misled investors regarding the true value of the company.

On June 25, 2002, WorldCom announced that it had improperly treated more than $3.8 billion in ordinary costs as capital expenditures in violation of generally accepted accounting principles and would have to restate its publicly-reported financial results for 2001 and their first quarter of 2002. WorldCom later announced that its reported earnings for 1999 through the first quarter of 2002 had overstated earnings by $3.3 billion, and that it would likely write off goodwill of $50 billion. These disclosures had a catastrophic effect on the price of WorldCom shares and the value of WorldCom notes. WorldCom stock and bondholders, including state and private pension funds, lost hundreds of millions—if not billions—of dollars in investments.

On July 21, 2002, WorldCom filed for bankruptcy. WorldCom executives have pleaded guilty to violations of the securities laws, state governments and the United States Congress have investigated WorldCom's ascent and collapse, and WorldCom officers, directors, auditors, underwriting syndicates, and its most influential outside analyst have been sued in courts across the country.[1]

This Opinion addresses the motions to dismiss filed by most of the defendants named in the ERISA class action. Among other things, the defendants contend that WorldCom alone was the ERISA fiduciary for the 401(k) plan, and that the ERISA claims for breach of fiduciary duty can only be brought against WorldCom, which is in bankruptcy proceedings in this district. The defendants also contend that this action is seeking improperly to import the duties of disclosure created by the federal securities laws into the ERISA context, and that the claims against them must be dismissed for failure to state a claim under ERISA. For the following reasons, the motions to dismiss are granted in part and denied in part.

*Procedural History*

By Order dated September 18, 2002, two actions brought pursuant to ERISA plead-

---

**1.** This Court has already issued a number of opinions and orders in this litigation and in the *Securities Litigation. See In re Worldom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21242882 (S.D.N.Y. May 29, 2003) (consolidation order); *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21219037 (S.D.N.Y. May 22, 2003) (consolidation); *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21218995 (S.D.N.Y. May 20, 2003) (remand); *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21219049 (S.D.N.Y. May 19, 2003) (motion to dismiss); *In re WorldCom, Inc. Sec. Litig.,* Nos. 02 Civ. 3288, 03 Civ. 167(DLC), 03 Civ. 338(DLC), 03 Civ. 998(DLC), 2003 WL 21031974 (S.D.N.Y. May 05, 2003) (remand); *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 1563412 (S.D.N.Y. Mar.25, 2003) (severance); *In re WorldCom, Inc. Sec. Litig.,* 293 B.R. 308 (S.D.N.Y.2003) (remand); *In re WorldCom, Inc. Sec. Litig.,* Nos. 02 Civ. 3288(DLC), 02 Civ. 8981(DLC), 02 Civ. 9520(DLC), 2002 WL 31867720 (S.D.N.Y. Dec.23, 2002) (individual actions); *In re Worldcom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2002 WL 31729501 (S.D.N.Y. Dec.5, 2002) (stays); *In re WorldCom, Inc. Sec. Litig.,* 234 F.Supp.2d 301 (S.D.N.Y.2002) (discovery); *In re Worldcom, Inc. Erisa Litig.,* No. 02 Civ. 4816(DLC), 2002 WL 31599531 (S.D.N.Y. Nov.18, 2002) (lead plaintiff); *In re Worldcom, Inc. Sec. Litig.,* No. 02 Civ. 4816(DLC), 2002 WL 31095170 (S.D.N.Y. Sept.18, 2002) (consolidation); *Albert Fadem Trust v. Worldcom, Inc.,* No. 02 Civ. 3288(DLC), 2002 WL 31059859 (S.D.N.Y. Aug.15, 2002) (consolidation and lead plaintiff); *Albert Fadem Trust v. Worldcom, Inc.,* No. 02 Civ. 3288(DLC), 2002 WL 1485257 (S.D.N.Y. July 12, 2002) (stay).

ing claims in connection with WorldCom's 401(k) plan were consolidated under the caption *In re Worldcom, Inc. Sec. Litigation ("ERISA Litigation")*. Steven Vivien, Gail M. Grenier, and John T. Alexander were appointed lead plaintiffs, and Keller Rohrback, L.L.P. was appointed as Lead Counsel for the *ERISA Litigation* by Order dated November 18, 2002. The November 18 Order appointed Jeffrey Lewis of Lewis & Feinberg, P.C. and Elizabeth Cabraser of Lieff Cabraser Heimann & Bernstein, L.L.P. to serve as members of the plaintiffs' Steering Committee and Stull, Stull & Brody as local counsel. On December 20, 2002, plaintiffs filed the Consolidated Class Action Complaint ("Consolidated Complaint"). The director, officer, and employee defendants, including Bernard J. Ebbers, filed notice of their motions to dismiss the Consolidated Complaint on January 24, 2003. In the meantime, plaintiffs had served Andersen with an Amended Consolidated Class Action Complaint ("Amended Complaint"). Andersen filed notice of its motion to dismiss on January 25, 2003. On January 29, this Court granted plaintiffs' request for permission to file an Amended Consolidated Complaint. The Amended Complaint duplicates the Consolidated Complaint except for the allegations against Andersen. Unlike the Consolidated Complaint, the Amended Complaint does not include a claim against Andersen for knowing participation in breach of fiduciary duty under ERISA. For purposes of this Opinion, the Consolidated Complaint and the Amended Complaint will be referred to together as the "Complaint."

## Background

The descriptions that follow summarize the allegations in the Complaint that are most relevant to the motions to dismiss.

### The Plan

This action is brought by and on behalf of participants in the WorldCom 401(k) Salary Savings Plan ("Plan").[2] Beginning in 2000, the Plan absorbed several predecessor plans, including the MCI Plan, the IDB Communications Group, Inc. 401(k) Savings and Retirement Plan, the Western Union International, Inc. 401(k) Plan for Collectively Bargained Employees, and the SkyTel Communications, Inc. Section 401(k) Employee Retirement Plan (together, the "Predecessor Plans").

The Plan provided a number of different funds in which participants could choose to invest their account balances, including a money market fund, a bond fund, various equity funds, and one or more funds invested in WorldCom stock.[3] As described in the Summary Plan Descriptions ("SPD"), "[t]he purpose of the Plan is to encourage eligible employees to save on a regular basis, by salary deferral, and to provide [employees] an opportunity to become shareholders of the Company and thereby to furnish the incentives inherent in employee stock ownership." Under the Plan, participants had discretion to allocate their investments among the alternatives offered, and to reduce or eliminate their investments in WorldCom stock at any time. § 14.05.

WorldCom was the sponsor of the Plan and the administrator of the Plan. The Plan designated WorldCom as the Plan

---

**2.** The Plan is an "employee pension benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Plan is an "eligible individual account plan" as that term is defined in ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and a "qualified cash or deferred arrangement" as defined in I.R.C. § 401(k), 26 U.S.C. § 401(k).

**3.** The Plan is a "defined contribution" or "individual account" plan as defined by ERISA § 3(34), 29 U.S.C. § 1002(34).

Administrator under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and as the Investment Fiduciary.[4] §§ 1.02 & 1.32. Although the Plan authorized WorldCom to appoint others to act as Administrator or Investment Fiduciary for the Plan, WorldCom did not do so.

The Plan provides that the Investment Fiduciary's duties include

> without limitation, the power and discretion to:
>
> (a) Establish and change the investment alternatives among which Participants may direct the investment of their accounts; and
>
> (b) Review the status of the investment policy and the selection and performance of the investment alternatives offered under the Plan....

§ 14.05. Under the Plan, the Administrator had the power and authority to "[p]repare and distribute to Participants, in whatever manner the administrator determines to be appropriate, information explaining the Plan." § 14.03(j). WorldCom had and exercised discretionary authority or discretionary control over the management of the Plan, the disposition of the Plan's assets, and the administration of the Plan.

*Plaintiffs*

Named Plaintiffs Stephen Vivien, Gail M. Grenier, and John T. Alexander are or were participants in the Plan. They bring this action on their own behalf and on behalf of all participants in and beneficiaries of the Plan whose individual accounts held shares of WorldCom stock from September 14, 1998, until the date of filing of the Complaint.

*Defendants*

*Officers*

Pursuant to Section 14.02 of the Plan, any WorldCom officer had authority to perform WorldCom's functions as Plan Administrator and Investment Fiduciary. Section 14.02 provides, in pertinent part, that:

> If WorldCom, Inc. does not appoint individuals to carry out the duties of the Administrator or Investment Fiduciary ... then *any officer* of WorldCom, Inc. shall have the authority to carry out, on behalf of WorldCom, Inc., the duties of the Administrator and the Investment Fiduciary.

(emphasis supplied). WorldCom's officers with fiduciary obligations for the Plan consist of Bernard J. Ebbers ("Ebbers"), WorldCom's President and Chief Executive Officer; Scott D. Sullivan,[5] the Chief Financial Officer; Bert C. Roberts, a corporate officer; John W. Sidgmore, a corporate officer; and Dennis W. Sickle, WorldCom's Senior Vice President, Human Resources (together "Officer Defendants"). §§ 12–16. Ebbers and Sullivan exercised discretionary authority or discretionary control regarding management of the Plan, management or disposition of the Plan's assets, and the administration of the Plan.

*Directors*

WorldCom's directors authored and/or signed communications on behalf of WorldCom, including the prospectus included in WorldCom's Form S–8 registration statements which pertained to the Plan. Ebbers, Sullivan, Roberts, Sidgmore, James C. Allen, Judith Areen, Carl J. Aycock,

---

4. In addition, WorldCom was a named fiduciary of the Plan as defined by ERISA § 402(a), 29 U.S.C. § 1102(a).

5. By Order dated December 5, 2002, this Court granted Sullivan's request for a stay of litigation against him. He does not now move to dismiss.

Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., Gordon S. Macklin, Clifford L. Alexander, John A. Porter, and Lawrence C. Tucker were WorldCom directors during the relevant time period (together, except for Ebbers, "Director Defendants"). As members of WorldCom's board of directors, the Director Defendants had a duty to monitor the activities of the corporation and its management.

### Employees

Four WorldCom employees were involved in the administration of the Plan. In her capacity as WorldCom's Employee Benefits Director, Dona Miller exercised day-to-day authority with respect to the Plan and exercised discretionary authority or control regarding management of the Plan, management or disposition of the Plan's assets, and administration of the Plan. Miller also gave directions to the Plan's Trustee, Merrill Lynch.

WorldCom's Employee Benefits Manager, Tracy McAden; Director, Taxation and Cash Management, Ron Levitt; and Manager, Taxation and Cash Management, Margaret Barry, were authorized to transact business on behalf of the Plan. Together, Miller, McAden, Levitt and Barry constitute the WorldCom employees charged with having fiduciary obligations with respect to the Plan ("Employee Defendants").

### Arthur Andersen LLP

Andersen, a firm of certified public accountants, audited the year-end financial statements for WorldCom. Andersen also audited the Plan for 1999, 2000 and 2001 and delivered a "clean" audit opinion for the Plan each of those years. As the auditor for the Plan, Andersen valued WorldCom stock according to its publicly traded stock price. As the auditor for WorldCom, Andersen knew or should have known that WorldCom was employing improper accounting practices and had mate-

rially misstated its financial results during the years in which Andersen audited the company. Consequently, when Andersen audited the Plan it knew or should have known that WorldCom's public stock price did not accurately reflect the value of the company.

### Merrill Lynch

Merrill Lynch was named as the Plan Trustee, as defined in ERISA Section 403(a), 29 U.S.C. § 1103(a), in a trust agreement entered into by WorldCom and Merrill Lynch on October 10, 1994 ("Trust Agreement"). The Trust Agreement provided that

> Except as required by ERISA, the Trustee shall invest the Trust Fund as directed by the Named Investment Fiduciary, an Investment Manager or a Plan participant or beneficiary, as the case may be, and the Trustee shall have no discretionary control over, nor any other discretion regarding, the investment or reinvestment of any asset of the Trust

Trust Agreement § 5.01. The Plan provided that "[c]ontributions will be invested by the Trustee pursuant to written direction from Participants, each of whom has the right to choose among the investment alternatives selected by the Investment Fiduciary." § 9.02. Merrill Lynch independently analyzed the Plan's investment in WorldCom stock, and knew that WorldCom securities were a "potentially" imprudent investment. Merrill Lynch exercised authority or control respecting management or disposition of Plan assets, and rendered investment advice "for a fee or other compensation" regarding WorldCom stock and other Plan assets or had the authority or responsibility to render such advice. As an investment advisor, Merrill Lynch was asked to advise Plan fiduciaries and did advise them regarding Plan invest-

ments. Merrill Lynch did not, however, advise Plan fiduciaries to investigate the prudence of continuing to offer WorldCom stock as a Plan investment and itself failed to investigate the prudence of investing WorldCom stock.

### WorldCom

WorldCom is named as a defendant in this action and is alleged to have breached its fiduciary duties as Plan Administrator and Investment Fiduciary. WorldCom filed for bankruptcy on July 21, 2002, and is protected from litigation by the automatic stay provisions of the Bankruptcy Code.

### Discussion

All defendants except WorldCom and Sullivan have moved to dismiss the Complaint. The moving defendants seek dismissal of each claim brought against them.

### Legal Standards

#### Rule 8

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. Pleadings are to give "fair notice" of a claim in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

#### Rule 12(b)(6)

To dismiss an action pursuant to Rule 12(b)(6), a court must determine that "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would

entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992 (citation omitted).

Although the court's focus should be on the pleadings, it may also consider

> any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). The court need not credit general conclusory allegations that "are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995).

#### ERISA

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is a "comprehensive and reticulated statute" that governs employee benefit plans. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citation omitted). ERISA is designed to protect employee pensions and benefit plans by, among other things, "setting forth certain general

fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Employers are not required to establish employee benefit plans, but if they chose to do so, they must abide by ERISA. Congress wanted to ensure that if an employee was promised a benefit, the employee would receive it. *Lockheed Corp. v. Spink*, 517 U.S. at 887, 116 S.Ct. 1783.

### Fiduciary Status

■ ERISA contains a statutory definition of ERISA fiduciaries. It provides that:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis supplied). ERISA permits an ERISA fiduciary to wear "two hats," for example, as employer and fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 225, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d Cir.1985).

■ While ERISA's definition of fiduciary is "to be broadly construed," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997), an individual cannot be liable as an ERISA fiduciary solely by virtue of her position as a corporate officer, shareholder

or manager, *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir.1993). Because a fiduciary may wear "two hats," the statute "does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary *only 'to the extent' that he acts in such a capacity in relation to a plan." *Pegram*, 530 U.S. at 225–26, 120 S.Ct. 2143 (emphasis supplied) (citing Section 1002(2)(A)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997); *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987).

■ In sum, ERISA defines a fiduciary "in *functional* terms of control and authority over the plan." *Mertens*, 508 U.S. at 262, 113 S.Ct. 2063 (emphasis in original). The "threshold question" in an action charging breach of a fiduciary duty under ERISA "is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226, 120 S.Ct. 2143.

### Fiduciary Duties

■ Those who are found to be ERISA fiduciaries have "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specified information and the avoidance of conflicts of interest." *Mertens*, 508 U.S. at 251–52, 113 S.Ct. 2063 (citation omitted). The ERISA fiduciary duties are drawn from the common law of trusts, which "often will inform, but will not necessarily determine the outcome of" interpretations of ERISA's fiduciary duties. *Varity Corp.*, 516 U.S. at 497, 116 S.Ct. 1065. "In supervising pension as-

sets, plan trustees have fiduciary obligations that have been described as the highest known to the law." *Flanigan v. General Elec. Co.*, 242 F.3d 78, 86 (2d Cir.2001) (citation omitted). An employer's or plan sponsor's decision to adopt, modify, or terminate a benefit plan, however, is not a fiduciary act since the statute's defined functions of a fiduciary do not include plan design. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Siskind*, 47 F.3d at 505.

█ The statutory definition of a fiduciary refers to the functions of "management or disposition" of assets and "administration" of a plan. *See* 29 U.S.C. § 1002(21)(A). The "management or disposition" language in ERISA, *see* 29 U.S.C. § 1002(21)(A)(i), "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." *Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir.2002) (citation omitted). An ERISA fiduciary must "conduct a careful and impartial investigation" of the merits and appropriate structure of a plan investment. *Flanigan*, 242 F.3d at 86 (citation omitted).

"The ordinary trust law understanding of fiduciary *administration* of a trust is to perform the duties imposed, or exercise the powers conferred, by trust documents." *Varity Corp.*, 516 U.S. at 502, 116 S.Ct. 1065 (emphasis supplied). "[I]t also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan." *Id.* at 504, 116 S.Ct. 1065 (citation omitted).

Section 404(a) of ERISA holds fiduciaries to the "prudent man" standard. 29 U.S.C. § 1104(a) ("Section 404(a)"). It provides:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries . . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a).

█ ERISA fiduciaries are obligated "to ensure that fund assets are held and administered for the sole and exclusive benefit of plan participants." *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*, 37 F.3d 55, 61 (2d Cir.1994). When acting as an ERISA fiduciary, a person must manage and dispose of plan assets with "an eye single" to the interests of plan beneficiaries and participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982).

### Liability Under ERISA

ERISA Section 409(a), 29 U.S.C. § 1109(a), provides that ERISA fiduciaries will be personally liable for breach of their fiduciary duties. ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), sets forth six civil enforcement provisions, which provide, *inter alia*, that a plan participant or beneficiary may bring an ERISA action for breach of fiduciary duties. A Section

502(a)(2) action is, however, limited by its terms to actions against fiduciaries. *Mertens*, 508 U.S. at 253, 113 S.Ct. 2063. Even a non-fiduciary who knowingly participated in a breach of fiduciary duty cannot be liable for ordinary money damages under Section 502(a)(2). *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir.2003).

### Identification of Fiduciaries

#### Officer Defendants

■ Among the moving Officer Defendants, only Ebbers is alleged to have had and to have exercised discretionary authority and discretionary control over the administration and management of the Plan. Although the Complaint's allegations against Ebbers do little more than track the statutory definition of a fiduciary, similar allegations have been found sufficient to satisfy the Rule 8 pleading standard. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir.2002).

■ The fiduciary status of the remaining three Officer Defendants—Sickle, Roberts and Sidgmore—is alleged to arise solely from Section 14.02 of the Plan, which provides that "any" officer shall have the authority to perform tasks as the "Investment Fiduciary" in the event that WorldCom does not appoint someone else to carry out the duties of Administrator or Investment Fiduciary. The Complaint alleges that WorldCom did not appoint anyone else to act as the Plan Administrator or Investment Fiduciary. Although the Plan authorized WorldCom in such circumstances to appoint "any" officer to act as a plan fiduciary, fiduciary status under ERISA arises from the exercise of authority. Since the Complaint does not allege that Sickle, Roberts or Sidgmore were appointed as fiduciaries and that they functioned as such, it has not satisfied the threshold standard for alleging ERISA fiduciary liability.

The plaintiffs argue that because the Plan authorized WorldCom to appoint "any" officer as a fiduciary, the Plan should be read as automatically appointing *all* of WorldCom's officers as fiduciaries in the wake of WorldCom's failure to appoint any other individual to be the Plan Administrator or Investment Fiduciary. The plaintiffs' construction would require, at a minimum, the substitution of the word "all" for "any." The Plan must be construed as written. In any event, neither the Plan nor ERISA impose fiduciary responsibilities on any person without assigning to them the duty to perform ERISA fiduciary functions. The Complaint does not allege that any officer other than Ebbers and Sullivan ever performed or were ever given such duties. The claims against Sickle, Roberts and Sidgmore are dismissed.

#### Employee Defendants

■ Of the four Employee Defendants, only Miller, WorldCom's Employee Benefits Director, is alleged to have had and to have exercised discretionary authority and control over management and administration of the Plan, and to have provided direction to Merrill Lynch, the Plan's Trustee. The allegations against the remaining Employee Defendants—McAden, Levitt, and Barry—are insufficient to plead that they functioned as ERISA fiduciaries. The Complaint alleges only that they transacted business on behalf of the Plan, but does not allege that they had or exercised any discretionary authority or control over the administration or management of the Plan or its assets.

Miller contends that the Complaint fails to state a claim even as to her because it pleads boilerplate and conclusory allegations without pleading facts to support those allegations. "Rule 8(a)'s simplified

pleading standard" applies here. *Swier-kiewicz*, 534 U.S. at 513, 122 S.Ct. 992.

*Director Defendants*

■ Each of the Director Defendants is alleged to have exercised fiduciary authority through the act of signing or authoring the Section 10(a) prospectus included in the SEC Form S–8 registration statements for WorldCom. The SPD is a part of the Section 10(a) prospectus. The SPD in turn incorporates by reference certain WorldCom SEC filings, including, for example, WorldCom Forms 10–K, 10–Q, and 8–K. This allegation is insufficient to state a claim that the Director Defendants were ERISA fiduciaries.

A corporation and its board may wear two "hats"—that of employer and of ERISA fiduciary. ERISA liability arises only from actions taken or duties breached in the performance of ERISA obligations. *Pegram*, 530 U.S. at 225–26, 120 S.Ct. 2143; *compare Varity Corp.*, 516 U.S. at 500, 116 S.Ct. 1065 (employer spoke in significant part as plan administrator when it spoke to employees transferring from one subsidiary to another). The SEC filings are documents that directors must execute to comply with a corporation's obligations under federal securities laws. Although the SPD incorporates SEC filings by reference and is part of the Section 10(a) prospectus, those connections are insufficient to transform those documents into a basis for ERISA claims against their signatories.

■ The plaintiffs also contend that the members of the Board of Directors are fiduciaries because of their control of WorldCom. The plaintiffs allege that the Plan names WorldCom as the Plan Administrator and Investment Fiduciary, and permits WorldCom to appoint individuals, including "any" WorldCom officer, to these positions as well. Relying on administrative agency guidance for fiduciaries who have appointed other fiduciaries, they assert that the right to appoint and to remove the individuals who will fill these positions is a fiduciary function, specifically, the fiduciary duty to monitor the performance of an appointee. *See* 29 C.F.R. § 2509.75–78 at F.R.–17.[6] They refer next to the law of WorldCom's state of incorporation, Georgia, that provides, rather unexceptionally, that all corporate powers are exercised by and the affairs of the corporation are managed under the direction of the Board of Directors.[7] The plaintiffs conclude that, for these reasons, WorldCom's directors were the individuals who held the authority to appoint and remove Plan fiduciaries, and are therefore, themselves fiduciaries.

The plaintiffs' argument goes too far. It would make any supervisor of an ERISA fiduciary also an ERISA fiduciary. They have provided no statutory or decisional

---

6. 29 C.F.R. § 2509.75–78 is the last in a series of Department of Labor questions and answers. It states:

"Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?

A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satis-

fies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure."

7. The statute states: "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors...." Ga. Stat. Ann. § 14–2–801.

support for that proposition. The regulatory advice on which they rely gives guidance for those who are already ERISA fiduciaries; it does not purport to make supervisors of fiduciaries also fiduciaries. Moreover, the Georgia statute describes the general powers of a board of directors. It addresses those circumstances in which a board is wearing its corporate "hat," and not an ERISA "hat." In sum, the Complaint does not sufficiently allege that the Director Defendants functioned as ERISA fiduciaries; the claims against them are dismissed.

### Merrill Lynch

Merrill Lynch is alleged to have been an ERISA fiduciary both to the extent that it exercised authority regarding administration of the Plan, *see* Section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(i), and to the extent it rendered investment advice with respect to the Plan, *see* Section 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii). The Complaint's allegations are sufficient with respect to Merrill Lynch's administration of the Plan, but not with respect to its role as an investment advisor.

### Administration of the Plan

▆▆▆ The Complaint alleges that Merrill Lynch breached its fiduciary duties by continuing to invest Plan assets as it was directed by the Plan Administrator and Investment Fiduciary and by the Plan participants who individually chose to invest assets in WorldCom stock even though Merrill Lynch "knew" that those investments were potentially imprudent. Merrill Lynch argues that a document integral to the Complaint—the Trust Agreement—provides conclusive evidence that it was

not a fiduciary since it had no discretion over investment choices.

Under the terms of the Plan and the Trust Agreement, Merrill Lynch was required to follow the directions as to investments given to it by the Investment Fiduciary, that is, WorldCom, and the Plan participants. Nonetheless, Merrill Lynch retained the discretion and even the obligation as a directed trustee to abide by duties imposed by ERISA.

Section 403(a), 29 U.S.C. § 1103(a), the directed trustee provision, states in pertinent part,

> [A]ll assets of an employee benefit plan shall be held in trust by one or more trustees.... [T]he trustee ... shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that—
>
> (1) the plan expressly provides that the trustee ... [is] subject to the direction of a named fiduciary who is not a trustee, in which case the *trustees shall be subject to proper directions* of such fiduciary which are made in accordance with the terms of the plan and *which are not contrary to this chapter* ....

29 U.S.C. § 1103(a) (emphasis supplied). As a directed trustee, therefore, Merrill Lynch was deprived of discretion to manage and control the Plan's assets generally, but *retained the discretion*, and indeed the obligation, to follow only "proper" directions of the Investment Advisor, directions which were made in accordance with the terms of the WorldCom Plan and which were not "contrary to" the ERISA statute.[8]

---

**8.** Merrill Lynch contends that it was required as a directed trustee to carry out investment instructions unless it was "clear on the face" of the instructions that they violated ERISA or the Plan. It finds support for this view in the legislative history for ERISA. This is not

an issue that must be resolved at this stage of the litigation. It would appear, however, that the standard that should apply to Merrill Lynch's conduct is the prudent person standard articulated in the text of the statute. *See Koch v. Dwyer,* No. 98 Civ. 5519(RPP), 1999

Section 403(a) does not, therefore, eliminate the fiduciary status or duties that normally adhere to a trustee with responsibility over ERISA assets. It does, however, modify those duties. *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir.1994). A directed trustee is "not justified in complying with … directions if the trustee knows or ought to know that the holder of the power is violating his duty to the beneficiaries as a fiduciary in giving the directions." *Id.* Specifically, the directed trustee is not relieved of the obligations "to conform to the prudent man standard of care, to attempt to remedy known breaches of duty by other fiduciaries, and to avoid prohibited transactions." *Id.* (citation omitted).

To the extent, therefore, that Merrill Lynch is alleged to have followed instructions to invest employee funds in World-Com stock when a prudent trustee would know that WorldCom's decision to continue to offer its own stock to its employees as an investment option was imprudent, or otherwise in violation of WorldCom's obligations under ERISA, then Merrill Lynch may be liable as an ERISA fiduciary. As a directed trustee, Merrill Lynch "was not required to exercise its independent judgment in deciding how and whether to [invest employee funds as directed]. It only had to make sure [that WorldCom's] directions were proper, in accordance with the terms of the plan, and not contrary to ERISA." *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1371 (11th Cir.1997). *See Dwyer*, 1999 WL 528181, at *9–10.

Merrill Lynch places great emphasis on *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264 (8th Cir.1994), a decision which followed *FirsTier*, and its conclusion that a directed trustee was not a fiduciary. In *Maniace*, the Eighth Circuit reviewed a grant of summary judgment in favor of a directed trustee for an employee stock ownership plan ("ESOP"). It observed that "obligations of a directed trustee are something less than that owed by typical fiduciaries." *Id.* at 268. In connection with an ESOP plan, where the only investment is in the company's stock, the directed trustee was "not required to weigh the merits of an investment in [the company's] stock against all other investment options every time it was directed to purchase said stock." *Id.* The court then applied the standard articulated above, and found that the record created on summary judgment did not permit a finding that the purchase of the company's stock had "violated the Plan or was contrary to ERISA." *Id.* It reaffirmed its holding in *FirsTier* that Section 403 does not eliminate but only modifies a trustee's fiduciary duties, and that the prudent person standard of care remained "despite the [defendant's] status as a directed trustee." *Id.* *Maniace* does not, therefore, require a finding that a directed trustee can never be a fiduciary.

*Investment Advisor*

The Complaint alleges that Merrill Lynch rendered advice regarding investment of Plan assets and thus was a fiduciary as defined in ERISA Section 3(21), 29 U.S.C. § 1002(21). The Complaint alleges that Merrill Lynch failed to fulfill its fiduciary obligations as an investment advisor when it failed to disclose its doubts regarding the prudence of investing in WorldCom stock or, in the alternative, failed to investigate or to advise other fiduciaries to investigate the prudence of continuing to invest plan assets in World-Com stock.

As the plaintiffs acknowledge, the Trust Agreement does not give Merrill Lynch authority or responsibility to provide in-

WL 528181, at *9–10 (S.D.N.Y. July 22, 1999).

vestment advice to anyone. The plaintiffs argue that their pleading provides sufficient notice that Merrill Lynch was an investment advisor as that term is defined in the Department of Labor regulations that define fiduciaries. Under the regulations, an investment advisor is a person who "renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property," and fulfills one of two other conditions.[9] *See* 29 C.F.R. § 2510.3–21(c)(1)(i). The plaintiffs argue in their briefing that the condition that applies to Merrill Lynch is as follows:

> Such person either directly or indirectly . . .
>
> (B) *Renders any advice* described in paragraph (c)(1)(i) of this section *on a regular basis* to the plan *pursuant to a mutual agreement,* arrangement or understanding, *written or otherwise,* between such person and the plan or a fiduciary with respect to the plan, *that such services will serve as a primary basis* for investment decisions with respect to plan assets, *and* that such person will render *individualized investment advice* to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

*Id.* at 21(c)(1)(ii)(B) (emphasis supplied). Nothing in the Complaint gives Merrill Lynch sufficient notice that it is alleged that it provided investment advice on a regular basis pursuant to an agreement that such advice would serve as a primary basis for investment decisions with respect to plan assets and that the advice would be individualized. The plaintiffs have failed to allege that Merrill Lynch was a fiduciary because it acted as an investment advisor.

*Summary*

The Complaint adequately alleges that Ebbers, Miller and Merrill Lynch were ERISA fiduciaries. An analysis of the motions by these defendants and Andersen to dismiss the claims against them follows.

*First Claim for Relief*

 The first claim of the Complaint alleges that Ebbers and Miller, as "Fiduciary Defendants," breached their fiduciary duty to act with "prudence," as required by Section 404(a)(1)(B), when they continued to offer WorldCom stock as an investment alternative under the Plan.[10] Claim One alleges that as fiduciaries, Ebbers and Miller were required to investigate and to monitor the Plan's investments, including its investment in WorldCom stock. Had they done so, plaintiffs allege, they would have discovered that WorldCom was an infirm investment and they would have been obligated to reassess the merits of allowing partici-

---

9. While the Complaint pleads in conclusory language that Merrill Lynch qualified as a fiduciary under both of the two alternative tests, in its briefing it has abandoned any argument that Section 21(c)(ii)(A) applies. That section defines a fiduciary as someone who "[h]as discretionary authority or control . . . with respect to purchasing or selling securities. . . ." 29 C.F.R. § 2510.3–21(c)(ii)(A).

10. The Claim is pleaded against all "Fiduciary Defendants," yet only the Officer Defen-

dants, the Employee Defendants and Merrill Lynch are alleged to have had a duty to monitor and evaluate the appropriateness of continuing to offer WorldCom stock as an investment alternative. On the other hand, of those defendants for whom there are adequate allegations of fiduciary status, only Merrill Lynch and the Officer Defendants are alleged to have caused plaintiffs losses and to be liable for damages. Miller is not alleged to be liable for plaintiffs' losses.

pants to continue to invest in WorldCom stock, and would have divested the Plan of its WorldCom holdings. Claim One also alleges that because Merrill Lynch knew that WorldCom stock was potentially an imprudent investment, it was not entitled to follow the direction of the Plan fiduciaries to invest in WorldCom stock.[11]

The defendants contend that they had no discretion as to whether an investment in WorldCom stock should be offered to employees since the SPD advised WorldCom employees that one of their investment options was to invest in WorldCom stock.[12] SPDs are expected to "be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990); *see also Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2d Cir.2001). "Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988). The defendants argue that because neither the design of a plan, nor the failure to amend a plan constitute a breach of fiduciary duties under ERISA, *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–44, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), they cannot be sued for failing to amend the SPD and eliminate WorldCom stock as an investment option.

Under the Plan, the Investment Fiduciary had the discretion to choose and change the investment alternatives provided to employees. While the SPD explained the reason why one of the alternatives offered to employees was an investment in WorldCom stock, nothing in the Plan committed WorldCom to offer an investment in WorldCom stock through its 401(k) plan. To the extent, therefore, that any Plan fiduciary had responsibility to decide or present views on the wisdom of the investment options, it would have been a breach of that duty not to alert WorldCom to the need to eliminate, or at least, to consider eliminating WorldCom stock as one of the investment alternatives.

Even in the context of an ESOP, which is designed to offer employees the opportunity solely to invest in the employer's stock, a fiduciary may be liable for continuing to offer an investment in the employer's securities, at least where the plaintiff can show that circumstances arose which were not known or anticipated by the settlor of the trust that made a continued investment in the company's stock imprudent, and in effect, impaired the purpose for which the trust was established. *See Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir.1995). In *Moench*, the court opined that a corporate insider's knowledge of the impending collapse of the cor-

---

**11.** Since the Complaint fails to plead adequately that Merrill Lynch was an investment advisor fiduciary, the allegations regarding its alleged breach of its duties as an investment advisor are not addressed.

**12.** The defendants argue in addition that Claim One must be dismissed because participants exercised exclusive control over their investment decisions. Under ERISA, where a participant exercises "independent control" over the assets in his account, a fiduciary cannot be liable for any loss that results from the participant's exercise of control. 29

U.S.C. § 1104(c)(1). This provision does not require dismissal of the claim, however, since the existence of independent control is an affirmative defense and, in any event, a question of fact. Most significantly, under regulations issued by the Department of Labor, a participant's control over his investment decisions is "not independent" if a "plan fiduciary has concealed material non-public facts regarding the investment from the participant" unless the disclosure would violate the law. 29 C.F.R. § 2550.404c–1(c)(2).

poration's stock price, the "precipitous decline" in the price of that stock, and the fiduciary's own "conflicted status" might constitute such a change in circumstances. *Id.* at 572.

Plaintiffs have stated a claim for breach of ERISA fiduciary duties by alleging that Ebbers, Miller and Merrill Lynch were obligated to but failed to act with prudence regarding the Plan's continued offer of WorldCom stock as a Plan investment. WorldCom stock could have been removed as one of the investments offered under the Plan without amending the Plan and plaintiffs have adequately alleged that these fiduciaries should have, but failed, to consider or recommend doing so.

*Second Claim for Relief*

■ Plaintiffs' second claim for relief alleges that Ebbers, as an "Officer and Director Defendant," breached his fiduciary duty under Section 404(a) in two ways: first, by failing "to monitor" the Plan's other fiduciaries in connection with the investment of the Plan's assets and, second, by failing to disclose to the "Investment Fiduciary," that is to WorldCom, and other "investing fiduciaries" material facts he knew or should have known about the financial condition of WorldCom. The plaintiffs argue in this connection that Ebbers had a duty to insure that WorldCom made public disclosures that complied with federal securities laws.[13] These allegations state a claim against Ebbers.

Ebbers argues that the second theory— the duty to disclose—arises under the federal securities laws and not under ERISA. He argues that allowing plaintiffs to state an ERISA claim for failure to disclose information that, if material, Ebbers would have been required by the securities laws to disclose impermissibly extends the reach of ERISA and imposes on corporations a duty of continuous disclosure not contemplated by the well-developed regime of securities regulation.

It is undisputed that every participant in WorldCom's ERISA Plan who sold or bought WorldCom securities is a putative member of the class in the companion WorldCom *Securities Litigation*, and that the Plan itself, like many other pension funds that invested in WorldCom stock, is also a putative class member. Ebbers is one of many defendants in that litigation. In the event of any judgment for plaintiffs or a settlement in the *Securities Litigation*, the Plan and its participants could share in any recovery.

■ But Ebbers's potential liability to employees who invested in WorldCom stock through the Plan for violations of the federal securities laws cannot shield him from suit over his alleged failure to perform his quite separate and independent ERISA obligations. When Ebbers wore his ERISA "hat" he was required to act with all the care, diligence and prudence required of ERISA fiduciaries. When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity. Plaintiffs' allegation that Ebbers failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim.

*Third Claim for Relief*

■ The plaintiffs' third claim alleges that Ebbers and Miller, as "WorldCom Defendants," breached their fiduciary duties by making material misrepresenta-

---

**13.** Plaintiffs suggest that public disclosures "coincident" with the SEC quarterly filings might have been adequate to comply with the ERISA duty to disclose.

tions about the soundness of WorldCom stock and the prudence of an investment in WorldCom stock, and by transmitting materials containing the misrepresentations to Plan participants. Plaintiffs allege that by failing to disclose fully and accurately infirmities in WorldCom's stock price, Ebbers and Miller caused plaintiffs to make and maintain investments in WorldCom stock even though Ebbers and Miller knew or should have known that WorldCom securities were not a prudent investment. The misrepresentations are alleged to have been contained in WorldCom's SEC filings, which were attached as required by the federal securities laws to a prospectus given to WorldCom employees.[14]

■ An ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.

In arguments that overlap with those made in connection with the Second Claim, Ebbers and Miller argue that the Third Claim imposes a continuous duty of disclosure on ERISA fiduciaries that overwhelms the federal securities law disclosure requirements and compels fiduciaries to violate the prohibitions against insider trading. If an ERISA fiduciary who was also an insider discovers material information affecting the value of the investment in the Plan sponsor's stock, they posit that the fiduciary has one of two choices. If he discloses material information to Plan participants before making it publicly available, he would violate the insider-trading

laws by suggesting to Plan participants that they divest stock based on material nonpublic information. *See* 15 U.S.C. §§ 78u–1(a)(1)(B) & (b)(1)(A) (2002). If the fiduciary publicly discloses the material information, the Plan participants would be no more protected by virtue of ERISA than they would be as investors protected by the securities laws. They contend that plaintiffs' claim stretches ERISA far beyond its intended scope. They emphasize that the alleged material misstatements were the SEC filings incorporated by reference into the Plan SPDs and that those statements were prepared and published pursuant to the securities laws, not ERISA. Miller, in particular, argues that, if credited, plaintiffs' logic would impose ERISA fiduciary obligations on all authors of corporate SEC filings, a conclusion supported by neither the statute nor caselaw.

■ Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings. Claim Three adequately pleads that Ebbers and Miller, each of whom is alleged to have been a fiduciary through *inter alia* his or her administration of the WorldCom Plan, breached their fiduciary obligations under ERISA by at the very least transmitting material con-

14. The federal securities laws require corporations that choose to sponsor a 401(k) plan that offers an employer's securities to file a Form S–8 registration statement with the SEC. Part I of the Form S–8 is the Section 10(a) prospectus that must be disseminated to employees under the Securities Act. *See* Securities Act, Rule 428, 15 U.S.C. § 77j; 17

C.F.R. § 230.428. The securities laws also require a Section 10(a) prospectus to attach other corporate SEC filings, including the filings giving rise to plaintiffs' third claim. *See* 15 U.S.C. § 77j; Commodity and Securities Exchanges Form S–8, 55 Fed.Reg. 23909–01, Item 3 (June 13, 1990) (Incorporation of Documents by Reference).

taining misrepresentations to Plan participants.[15]

■ The defendants have tried to describe a tension between the federal securities laws and ERISA that would require the dismissal of this claim. Their arguments, however, cannot undermine the soundness of the general principle underlying Claim Three that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in Claim Three, despite the defendants' suggestions otherwise, that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.

■ The difficulties that exist in the analysis of this claim arise principally from the facts that at least one of the defendants, Ebbers, is alleged to be both a corporate insider and an ERISA fiduciary, and that the alleged misrepresentations concern the company itself. The defendants argue that the plaintiffs are imposing a duty of continuous disclosure on ERISA fiduciaries that does not exist under the federal securities laws. While there may be some case in which there will be a conflict between the two statutory schemes, it is not so evident that a conflict exists here. The Complaint alleges that WorldCom's SEC filings contained material misrepresentations regarding World-Com's financial condition. Having spoken in its periodic SEC filings about the company's financial condition, WorldCom had a duty under the federal securities laws to correct any prior material misrepresentation when it became aware of the falsity. *See In re Time Warner, Inc. Sec. Litig.,* 9 F.3d 259, 268 (2d Cir.1993). In any event, the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory regime. *See United States v. Sforza,* 326 F.3d 107, 111 (2d Cir.2003).

In conclusion, the motion to dismiss Claim Three is denied as to defendants Ebbers and Miller. This claim adequately alleges that they transmitted materially false information to Plan participants in breach of their fiduciary obligations.

*Fourth Claim for Relief*

■ Plaintiffs' fourth claim alleges that Ebbers, as an "Officer and Director Defendant," breached the ERISA duty of loyalty by allowing WorldCom stock to be offered as a Plan investment while he was participating in compensation programs that gave him a personal interest in maintaining a high price for WorldCom stock. They assert that his personal investments created a conflict of interest that required him to engage an independent fiduciary to make independent judgments about the Plan's investment in WorldCom stock and the information to transmit to participants concerning such investments.

The ERISA duty of loyalty focuses on a fiduciary's discharge of his duty with respect to a plan. *See Pegram,* 530 U.S. at

---

**15.** Certain of the defendants' arguments, particularly those by Miller, are more appropriately made in the context of a motion pursuant to Rules 11 or 56, Fed.R.Civ.P. Because of the standards applicable to a claim governed by Rule 8 pleading standards, and the plaintiffs' decision to use generalized allegations against groups of defendants, the plaintiffs have not had to articulate in the Complaint how Miller would have acquired sufficient knowledge of WorldCom's financial condition to understand that it was not prudent or reasonable to rely on the company's SEC filings.

223–24, 120 S.Ct. 2143. When administering or managing a plan, a fiduciary must act solely in the interest of beneficiaries. *Donovan,* 680 F.2d at 271. ERISA acknowledges, however, that a fiduciary

> may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers ... or even as plan sponsors (*e.g.,* modifying the terms of a plan as allowed by ERISA to provide less generous benefits).

*Pegram,* 530 U.S. at 225, 120 S.Ct. 2143. The issue, therefore, is whether the defendant took an action to affect plan participants adversely while performing a fiduciary function. *Id.* at 226, 120 S.Ct. 2143.

Plaintiffs' allegations that Ebbers's holding of WorldCom stock and participation in its compensation program created a conflict of interest are insufficient by themselves to state a claim under ERISA. Plaintiffs do not allege that Ebbers's personal investments caused him to take or fail to take any actions detrimental to the Plan *while* he was wearing his "fiduciary hat." Because plaintiffs have not alleged that in carrying out his obligations under the Plan, Ebbers did not act with an "eye single" to the interests of the Plan beneficiaries, Claim Four is dismissed.

*Fifth Claim for Relief*

█ Claim Five alleges that as the Plan's auditor, Andersen owed the participants and beneficiaries a duty of due care and that it breached that duty by negligently performing its audits for the Plan and seriously misrepresenting the financial condition of the Plan. Plaintiffs allege that because Andersen served as the auditor for both WorldCom and for the Plan, it knew or should have known that using WorldCom's stock price to assess the value of the Plan's investments in WorldCom securities "was inappropriate and materially false and misleading." Claim Five further alleges that Andersen consented to the inclusion of its audit in communications disseminated to Plan participants and that Andersen "knew or should have known that participants and beneficiaries would rely" on these communications and "would be reasonably foreseeably damaged by the material inaccuracies therein."

Andersen moves to dismiss Claim Five. Andersen argues that the bar contained in the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, 112 Stat. 3227 ("SLUSA") (codified in scattered sections of Title 15 of the United States Code) against class action suits alleging state law claims in connection with the sale or purchase of "covered" securities applies to Claim Five. Andersen is correct; Claim Five is preempted by SLUSA and must be dismissed.

SLUSA's preemption provision states:

> *No covered class action based upon the statutory or common law of any State* or subdivision thereof *may be maintained in any State or Federal court* by any private party alleging—(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security. . . .

15 U.S.C. § 77p(b) ("Section 77p") (emphasis supplied). SLUSA defines a "covered class action" to include a lawsuit in which

> one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77p(f)(2)(A)(i)(II).[16] "Covered securities" include those listed on the New York Stock Exchange or on the National Market System Market System of the Nasdaq Stock Market. 15 U.S.C. § 77r(b)(1)(A). It is undisputed that WorldCom stock was a covered security.

██ Through SLUSA, Congress completely preempted those actions covered by its terms. *Spielman v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 332 F.3d 116, 123–124 (2d Cir.2003). As a consequence, it provides an exception to the well-pleaded complaint rule, and a plaintiff may not avoid the statute through artful pleading. *Id.* at 124 n. 5. A claim will be barred by SLUSA if a defendant shows that the claim is (1) a covered class action; (2) based on common or statutory state law; (3) alleging an untrue statement or omission of material fact; (4) in connection with the purchase or sale of a covered security. *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 01 Civ. 3013(DLC), 2001 WL 1182927, at *2 (S.D.N.Y. Oct.9, 2001). Plaintiffs' action is a class action, asserting a common law claim for negligence, based on communications by Andersen that are alleged to have "seriously misrepresented the financial condition of the Plan" and on which plaintiffs relied to their detriment in connection with their investments in WorldCom stock. Andersen has shown that the claim is preempted by SLUSA and must be dismissed.

Plaintiffs do not dispute that this is a "covered class action;" the plaintiffs' arguments regarding the remaining three criteria for preemption are addressed below.

*State Law*

Claim Five is a negligence claim arising under the common law. In their brief in opposition to Andersen's motion to dismiss, plaintiffs argue that the negligence claim is based on the law of Mississippi, where WorldCom was located. Plaintiffs argue nonetheless that Section 77p does not bar the negligence claim because the claim could not have been brought under the federal securities laws. Plaintiffs rely solely on the fact that negligence is not actionable under Section 10(b), which requires allegations of scienter.[17] Plaintiffs disregard the fact that other provisions of the securities laws, such as Sections 11 and 12(a)(2) of the Exchange Act, 15 U.S.C. §§ 77k & 77l(a)(2), do not require a showing of scienter. There are parallel SLUSA provisions in both the Securities Act and the Exchange Act. *Compare* 15 U.S.C. § 77p *and* 15 U.S.C. § 78bb(f). In any event, plaintiffs misread the statute.

██ Construction of a statute "must begin with the words of the text." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir.2003); *see Mallard v. United States Dist. Court*, 490 U.S. 296, 300–01, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). SLUSA's preemption provision bars claims that are "based upon the statutory or common law of any State." Nothing in the language of Section 77p suggests that it bars only state law claims that plead a certain level of scienter. In fact, the legislative history and statutory scheme reveal that the preemption provision is part of a far-reaching Congressional effort to concentrate securities litigation in federal court and to

---

**16.** Other provisions preserve the right to bring a covered class action based on state law claims in an issuer's state of incorporation, *see* 15 U.S.C. § 77p(d)(1)(A), and preserve certain rights for state pension plans, *see* 15 U.S.C. § 77p(d)(2).

**17.** Plaintiffs also fail to address the implications for their argument of the fact that Andersen has been named as a defendant in Section 10(b) claims in the *Securities Litigation.*

preempt litigation filed in state court as part of an effort to circumvent another federal securities law, the Private Securities Litigation Reform Act of 1995, Pub.L. 104–67, 109 Stat. 737 (1995) (codified in sections of Title 15 of the United States Code). *See Spielman,* 332 F.3d at 121–122; *In re WorldCom, Inc. Sec. Litig.,* 293 B.R. 308, 324–328 (S.D.N.Y.2003) (*Securities Litigation* remand opinion). The decision to assert only a negligence as opposed to a fraud claim against Andersen is ineffective if asserted in an effort to insulate the claim from SLUSA.

*Untrue Statement or Omission of a Material Fact*

 Plaintiffs argue that their claim is not preempted because it does not allege that Andersen's misrepresentations were "public" statements. They contend that SLUSA only applies to claims alleging a public misrepresentation. The plaintiffs do not explain precisely what they mean by "public" and how that would protect them from SLUSA's reach. According to the Complaint, Andersen's misrepresentations were contained in SEC filings and distributed widely to WorldCom employees. Some insight is gained from the plaintiffs' reliance on federal securities law cases which describe the "fraud-on-the-market theory," a theory under which defendants' statements are presumed to have affected the market valuations of the securities at issue. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 244, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 33 (2d Cir.2002). The fraud-on-the-market theory, however, is a substitute for alleging the direct reliance required to state a Section 10(b) securities fraud claim, and is not, as plaintiffs attempt to argue, itself a pleading requirement for all claims alleging misrepresentations in connection with the sale of securities. *See In re WorldCom, Inc. Sec. Litig.,*

No. 02 Civ. 3288(DLC), 2003 WL 21219049, at *17–18 (S.D.N.Y. May 19, 2003) (motion to dismiss in the *Securities Litigation* ).

 In any event, the text of Section 77p provides only that claims alleging "an untrue statement or omission of a material fact" are barred; it does not require that statements be "public." Indeed, even silence, when there is a duty to speak, may give rise to liability. And, of course, in the context of the federal securities laws, there is not requirement that a statement be "public." To state a cause of action for securities fraud under Section 10(b), for example, a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." *Lawrence v. Cohn,* 325 F.3d 141, 147 (2d Cir.2003) (quoting *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000)); *see also Kalnit v. Eichler,* 264 F.3d 131, 138 (2d Cir.2001) (citation omitted). Plaintiffs have alleged that Andersen made material misrepresentations to Plan participants in the audits incorporated in the SPD; that allegation falls within the purview of the SLUSA preemption provision.

*"In Connection with the Purchase or Sale of a Covered Security"*

SLUSA's preemption provision applies to claims alleging a misrepresentation "in connection with the purchase or sale" of a security. 15 U.S.C. § 77p(b). Although SLUSA does not define that phrase, the language is identical to the language of Rule 10b–5, which makes it unlawful "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in

connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. There is, however, a "slight" difference. *Spielman*, 332 F.3d at 124 n. 5 (Newman, J., concurring). Under Section 10(b), a plaintiff must prove that the fraud alleged "was *actually* 'in connection with' the purchase or sale of a security," while under SLUSA, a defendant is required to show only that the *plaintiff has alleged* fraud " 'in connection with the purchase or sale of a security.' " *Id.* (emphasis in original). Nonetheless, in construing the meaning of the phrase as it is used in SLUSA, courts, including this Court, have looked for guidance to the law interpreting Section 10(b) and Rule 10b–5 claims. *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342–43 (11th Cir. 2002); *Spielman*, 2001 WL 1182927, at \*2; *see also Spielman*, 332 F.3d at 124 (Newman, J., concurring) (collecting cases).

To state a Section 10(b) claim a plaintiff must allege that she actually bought or sold a particular stock. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 727, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Lawrence v. Cohn*, 325 F.3d 141, 147–48 (2d Cir.2003); *Caiola v. Citibank, N.A.*, 295 F.3d 312, 322 (2d Cir.2002). A transaction will be considered sufficiently connected to the purchase or sale of the stock if plaintiff demonstrates "an injury as a result of deceptive practices 'touching' its purchase or sale of securities." *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 964 (2d Cir.1993). Whether or not a misrepresentation is made "in connection" with the purchase or sale of security is to be broadly construed. As the Second Circuit has stated

> when the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value, made by a defendant whose position made it reasonable for the plaintiff to rely on the representation and imposed

some duty on the defendant to be honest or to disclose information, then whatever problems there may be with the case, a connection between the fraud and the transaction should not be one of them.

*Id.* at 967.

■ Plaintiffs first contend that because they allege injuries arising from the retention, as well as the purchase, of WorldCom stock, SLUSA preemption does not apply. It is unnecessary to decide whether SLUSA would apply to claims dealing *solely* with the retention of securities, rather than with purchase or sale. When, as here,

> a claim that sweeps within its ambit actual purchases or sales of stock *is* covered by SLUSA, a plaintiff may not avoid SLUSA's restrictions simply by alleging that a given misrepresentation caused him *both* to purchase and hold a particular security.

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1345 (11th Cir.2002) (emphasis in original). As in *Riley*, the fact that plaintiffs also retained those securities "does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase." *Id.* Not only does the Complaint make no effort to distinguish between purchasers and holders of WorldCom stock, it explicitly disavows any difference in the claims. Such a complaint is subject to dismissal under SLUSA. *See id.; Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F.Supp.2d 14, 18–19 (S.D.N.Y.2001).

Plaintiffs also argue that because the purchases were made in connection with and by the Plan acting at the participants' direction, rather than by the participants themselves, SLUSA does not apply. Throughout the Complaint, plaintiffs allege

that they directed the Plan to purchase WorldCom stock on their behalf and that the Plan did purchase and retain World-Com stock for the plaintiffs' benefit. Plaintiffs allege, for example, that the breaches of fiduciary duty "caused participants in the Plan to continue to make and to maintain substantial investment of their Plan accounts in WorldCom stock." Plaintiffs losses are alleged to have arisen from the Plan's "purchases and retention of WorldCom stock." Plaintiffs allege that they are presumed to have relied to their detriment on defendants' material misrepresentations "because the Plan purchased WorldCom stock and incurred losses on those investments, which losses resulted in reductions in the value of the Plan accounts of plaintiffs." The Complaint starkly and repeatedly alleges that plaintiffs suffered losses due to the purchase of WorldCom stock. The defendant has shown that the negligence claim is based on a misrepresentation made in connection with WorldCom stock.

The plaintiffs' related argument that the plaintiffs relied on Andersen's misstatements in the audit of the Plan, and not the misrepresentations regarding WorldCom stock itself, needs only a brief discussion. Claim Five explicitly alleges that Plan participants relied on the material inaccuracies about WorldCom contained in Andersen's audits of WorldCom itself. Even if the actionable misrepresentations were only contained in the Andersen audits of the Plan, the Complaint alleges that those misrepresentations concern the value of the WorldCom stock. For these reasons, Claim Five is preempted by SLUSA and is dismissed.

### Conclusion

For the reasons stated above, Andersen's motion to dismiss is granted. The motion to dismiss filed by Clifford L. Alexander, James C. Allen, Judith Areen, Carl J. Aycock, Max E. Bobbitt, Francesco Galesi, Stiles A. Kellett, Jr., Gordon S. Macklin, John A. Porter, Bert C. Roberts, John W. Sidgmore, Dennis W. Sickle, Lawrence C. Tucker, Tracy McAden, Ron Levitt, and Margaret Barry is granted. Merrill Lynch's motion to dismiss Claim One is granted in part, and denied in part. Ebbers's motion to dismiss is granted as to Claim Four, and denied as to Claims One, Two, and Three. Miller's motion to dismiss Claims One and Three is denied.

SO ORDERED.